No. 01-239

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 131

GLENDIVE MEDICAL CENTER, INC.,

Petitioner and Appellant,

v.

MONTANA DEPARTMENT OF PUBLIC
HEALTH AND HUMAN SERVICES,

Respondent and Respondent.

FILED

JUN 1 8 2002

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Seventh Judicial District,
In and for the County of Dawson,
Honorable Richard G. Phillips, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Lorraine A. Schneider, Schneider Law Offices, Glendive, Montana

For Respondent:

Gregory G. Gould, Luxan and Murfitt, Helena, Montana

John C. Koch, Department of Public Health and Human Services,
Helena, Montana

Submitted on Briefs:   September 6, 2001

Decided:   June 18, 2002

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Glendive Medical Center, Inc. (GMC), appeals from an order of the Montana Seventh Judicial District, Dawson County, affirming the Findings of Fact and Conclusions of Law of the Board of Public Assistance of the State of Montana. We affirm.

¶2 We restate the issue on appeal as follows:

¶3 **Did the District Court err in determining that the decision of the Board of Public Assistance was legally correct?**

*BACKGROUND*

¶4 The following relevant facts are taken from the undisputed findings of the hearings officer for the Montana Board of Public Assistance. Additional facts will be included in the discussion as necessary.

¶5 GMC operates a hospital, nursing home, and the Eastern Montana Veterans Home (EMVH), in Glendive, Montana. EMVH is a state-owned, 80-bed health care facility licensed by the Montana Department of Public Health and Human Services (DPHHS) to participate in the Montana Medicaid program as a skilled nursing facility for the sole use of veterans and their spouses. GMC originally contracted with the former Department of Corrections and Human Services (DCHS) to operate EMVH on behalf of DCHS. Since the July 1, 1995, effective date of an agency reorganization mandated by the 1995 Legislature, DPHHS has succeeded DCHS as the state agency party to the contract with GMC for the operation of EMVH.

2

¶6 GMC began management and operation of the newly-constructed EMVH in July 1995. GMC receives revenue from several sources for the operation of EMVH, including Veterans Administration (VA) per diem payments, Medicaid reimbursements, payments made by patients from their own resources, workers' compensation, and private insurance. Soon after assuming management and operation of EMVH, GMC applied for enrollment of EMVH in the Montana Medicaid program as a provider of skilled nursing facility services. GMC executed a provider enrollment form and a Medicaid nursing facility provider agreement on behalf of EMVH, and began submitting claims to Medicare and Medicaid in August 1995, after receiving its certification from the state.

¶7 GMC initially received Medicaid payments on behalf of EMVH based upon an interim, temporary Medicaid rate, until it filed a cost report with DPHHS based upon at least six months of participation in the Medicaid program. Upon receiving the cost report, DPHHS then calculates the proper Medicaid rate through an adjustment process based upon the reported costs submitted by EMVH. However, prior to submission of the six-month cost report, due in February 1996, GMC and DPHHS initiated discussions regarding the correct method of reporting the VA per diem payments.

¶8 GMC asserted that the Administrative Rules of Montana did not require it to report its receipt of the monthly VA per diem payment as anything other than a subsidy to offset against its general operating expenses. The rate at which Medicaid reimburses a participating medical facility is based upon operating costs reported in the facility's annual cost report. Medicaid reimbursement rates therefore differ from facility to facility. Under GMC's

3

suggested method of reporting the per diem payments, the rate at which Medicaid reimbursed GMC would be lower as a result of lower reported operating costs.

¶9 DPHHS, however, argued that the administrative rules required GMC to report the monthly VA per diem payment as a third-party liability payment. Reporting the per diem payments as a third-party payment would reduce GMC's Medicaid reimbursements by the aggregate amount of the VA per diem payment for each month, resulting in a steeper reduction of Medicaid reimbursement payments than under GMC's suggested method of reporting.

¶10 GMC subsequently submitted its cost report to DPHHS, reporting the VA per diem payments as an offset against operating expenses. DPHHS rejected this method of reporting and refused to release the Medicaid reimbursement payment to GMC unless GMC submitted a second cost report reflecting the VA per diem payment as a third-party liability payment. GMC submitted a second cost report under protest, reporting the monthly VA per diem payments as a third-party liability and requested an administrative hearing to determine the issue.

¶11 A fair hearing was subsequently held by a Hearing Examiner from the Agency Legal Services Division of the Montana Attorney General's Office. The Hearing Examiner entered findings of fact and conclusions of law, concluding that, according to the Administrative Rules of Montana, the VA is a third party as defined by Rule 46.12.304(2)(a), ARM, and that its per diem payments defray part of the cost of medical-related services. The Hearing

4

Examiner concluded, therefore, that the VA per diem payments received by GMC were to be reported as a third-party payment on Medicaid reimbursement claims forms.

¶12 The Montana Board of Public Assistance (Board) adopted the Hearing Examiner's conclusions, and GMC filed a Petition for Judicial Review challenging the Board's interpretation and application of the laws concerning third-party liability. The District Court affirmed the conclusions of the Board and determined that the policy of DPHHS to treat VA per diem as third-party liability was supported by its adopted rules. GMC appeals the order of the District Court and requests that this Court reverse the District Court and remand this matter to the DPHHS to reconcile GMC's Medicaid reimbursement claims to conform to its suggested interpretation of the law, requiring DPHHS to accept GMC's initial cost reporting method.

¶13 **Did the District Court err in determining that the decision of the Board of Public Assistance was legally correct?**

¶14 When reviewing an agency decision, we apply the same standard as did the district court. *Montana Power Co. v. Montana Public Serv. Com'n*, 2001 MT 102, ¶ 18, 305 Mont. 260, ¶ 18, 26 P.3d 91, ¶ 18. Where an agency's interpretation has stood unchallenged for a considerable length of time, it will be regarded as a great importance in arriving at the proper construction. *Montana Power*, ¶ 24. However, even "where a particular meaning has been ascribed to a statute by an agency through a long and continued course of consistent interpretation, resulting in an identifiable reliance, . . . such administrative interpretations are

not binding on the courts; rather, they are entitled to 'respectful consideration.'" *Montana Power*, ¶ 25 (citing *Doe v. Colburg* (1976), 171 Mont. 97, 100, 555 P.2d 753, 754).

¶15 This Court generally applies the same principles in construing administrative rules as are applicable to our interpretation of statutes. *State v. Incashola*, 1998 MT 184, ¶ 11, 289 Mont. 399, ¶ 11, 961 P.2d 745, ¶ 11 (citation omitted). The function of the court with respect to statutory construction is to interpret the intention of the statute or rule, if at all possible, from the plain meaning of the words, and if the meaning of the statute or rule can be determined from the language used, the court is not at liberty to add or to detract from the language therein. *Incashola*, ¶ 11; *Paulsen v. Bonanza Steak House* (1987), 225 Mont. 191, 197, 733 P.2d 335, 339. Additionally, absent ambiguity in the language of the statute or rule, this Court may not consider legislative history or any other means of statutory construction. *McKirdy v. Vielleux*, 2000 MT 264, ¶ 22, 302 Mont. 18, ¶ 22, 19 P.3d 207, ¶ 22 (citation omitted).

¶16 Rule 46.12.304(2)(a), ARM (1995) [renumbered 37.85.407(2)(a)], provides:

> A third party is defined as an individual, institution, corporation, or public or private agency that is or may be liable to pay all or part of the cost of medical treatment and medical-related services for personal injury, disease, illness, or disability of a recipient of medical assistance from the department or a county and includes but is not limited to insurers, health service organizations, and parties liable or who may be liable in tort. Indian health services is not a third party within the meaning of this definition.

¶17 Rule 46.12.304(1), ARM [renumbered 37.85.407(1)], provides in part:

> No payment shall be made by the department for any medical service for which there is a known third party who has a legal liability to pay for that medical service . . . .

6

¶18 Rule 46.12.309(1)(c), ARM [renumbered 37.85.415], provides in part:

(1) Medicaid will pay only for medical expenses:

. . .

(c) for which third party payment is not available.

¶19 The Hearing Examiner concluded and the Board agreed that the Veterans Administration is a public agency liable to pay part of the cost of medical-related services of qualified veterans and spouses of veterans, and is therefore a third party as defined by Rule 46.12.304(2)(a), ARM. The VA per diem payments, thus characterized as third-party liability payments, reduced GMC and EMVH's Medicaid reimbursement payment under Rules 46.12.304(1) and 46.12.309(1)(c), ARM.

¶20 GMC asserts that this interpretation is legally incorrect, and argues that there are legally relevant distinctions between the payments made by the specified third parties in Rule 46.12.304(2)(a), ARM (insurers, health service organizations, and parties who may be liable in tort), and the per diem payments made by the VA. GMC notes that the liabilities identified in Rule 46.12.304(2)(a), ARM, are instances where liable third parties make payments which are paid directly to and assignable by the patient to the health care provider. The VA per diem payment, however, is an aggregate, lump sum payment from the VA made directly to GMC and is neither receivable nor assignable by an individual veteran. An additional distinction noted by GMC is that the VA per diem payments are not portable, and therefore will not follow a particular veteran if he or she were to transfer to another medical facility.

¶21 Citing no authority or alternative definition other than Rule 46.12.304(2)(a), ARM, GMC argues that the essence of a third-party liability consists of an obligation owed to the

7

patient, enforceable by the patient, directly payable to the patient (similar to workers' compensation and Social Security), assignable by the patient, and one that is portable (not contingent on facility).

¶22 DPHHS responds that the above distinctions between the identified third parties in Rule 46.12.304(2)(a), ARM, and VA per diem payments are legally insignificant when considering the plain definition of "third party" and the non-exclusivity of the parties listed within the rule. DPHHS argues that the VA qualifies as a third party under a plain reading of the rule because the VA is a public agency liable to pay part of the cost of medical treatment and medical-related services to eligible veterans. DPHHS argues that nothing more than this is required to qualify as a third party under the rule's plain language.

¶23 DPHHS notes that the record stands undisputed that VA per diem payments are made on behalf of particular eligible veterans toward the cost of actual patient days of medical treatment and medical-related services provided at EMVH for each veteran's injury, disease, illness or disability. The aggregate, lump sum VA per diem payment is therefore attributable to services provided to a particular resident for a particular patient day at EMVH. DPHHS further notes that the VA will not remit the per diem payment to GMC unless GMC submits medical records accurately reflecting the number of days of care provided at EMVH to each particular eligible veteran.

¶24 Initially we note that neither party argued in the District Court or on appeal that the language in the administrative rules is ambiguous, nor did either party assert that the rules impermissibly exceeded the enabling statute or were improperly adopted by the agency. *See*

8

§ 2-4-305(6), MCA; *Haney v. Mahoney*, 2001 MT 201, ¶ 6, 306 Mont. 288, ¶ 6, 32 P.3d 1254, ¶ 6; *Bick v. State Dept. of Justice* (1986), 224 Mont. 455, 458-59, 730 P.2d 418, 421. Because we conclude that the language of Rule 46.12.304(2)(a), ARM, defining "third party" is unambiguous, this Court needs to look no further than its plain meaning to determine whether the District Court erred as a matter of law when it concluded that the VA was a third party as defined in Rule 46.12.304(2)(a), ARM. *McKirdy*, ¶ 22; *Incashola*, ¶ 11; *Paulsen*, 225 Mont. at 197, 733 P.2d at 339.

¶25   The relevant part of Rule 46.12.304(2)(a), ARM, in the instant matter defines "third party"in part as: a public agency that is or may be liable to pay all or part of the cost of medical treatment and medical-related services for personal injury, disease, illness, or disability. The language of the rule does not require that a third-party liability be directly payable to the patient, assignable by the patient, enforceable by the patient, nor portable, as argued by GMC.

¶26   As noted by DPHHS, the undisputed record reflects that the VA per diem payment is remitted to GMC only on behalf of particular eligible veterans toward the cost of actual patient days of medical treatment and medical-related services for the veteran's injury, disease or illness. More specifically, the record reflects that only eligible veterans are permitted to be admitted to EMVH and that, as long as eligibility requirements are met, GMC is entitled to receive the VA per diem payment for that particular patient for his or her medical treatment and services. For the purposes of defining "third party," it is therefore

9

irrelevant that GMC receives the per diem payment as a lump sum payment and that no patient is entitled to receive the per diem benefit individually.

¶27 Furthermore, pursuant to Rules 46.12.304(1) and 46.12.309(1)(c), ARM, neither DPHHS nor Medicaid will make payment for medical treatment or medical-related services for which a third party is liable. If GMC did not offset the VA per diem payment on its Medicaid reimbursement claims forms, GMC would receive partial duplicate payment for medical services rendered to the same patient for the same disability, injury, disease or illness. This is precisely what the administrative rules are intended to prevent. Moreover, DPHHS's practice and policy treating the VA per diem payments as third-party liability payments "comports with the general principle that 'Medicaid is intended to be the payer of last resort, that is, other available resources must be used before Medicaid pays for the care of an individual enrolled in the Medicaid program.'" *Estate of Krueger v. Richland Co. Social Services* (N.D. 1994), 526 N.W.2d 456, 464 (citing *New York State Dept. of Social Services v. Bowen* (2nd Cir. 1988), 846 F.2d 129, 133).

¶28 GMC also argues that DPHHS has no authority to interpret its own rule to require VA per diem to be reported as third-party liability in the absence of an express authorization or requirement within the rule. Essentially, GMC argues that nothing in the rule puts GMC on notice that it must deduct VA per diem payments from Medicaid reimbursement claims for individual veterans because DPHHS did not adopt a rule specifically requiring that VA per diem be "treated like" third-party liability.

10

¶29 DPHHS is enabled to adopt rules necessary for the administration of the Montana Medicaid program pursuant to § 53-6-113, MCA. The definition of "rule" is provided in the Montana Administrative Procedure Act, § 2-4-102(11), MCA. That section provides in part:

> "Rule" means each agency regulation, standard, or statement of general applicability that implements, interprets, or prescribes law or policy or describes the organization, procedures, or practice requirements of an agency.

A valid and enforceable agency rule cannot exceed its enabling statute and must be properly adopted pursuant to the requirements in § 2-4-301, et seq., MCA. See, *e.g.*, *Northwest Airlines, Inc., v. State Tax Appeal Board* (1986), 221 Mont. 441, 445, 720 P.2d 676, 678.

¶30 GMC does not assert that Rule 46.12.304(2)(a), ARM, exceeds its enabling statute or was improperly adopted, but that it does not provide specific notice that a third-party liability will be something other than an obligation owed to the patient, enforceable by the patient, directly payable to the patient, assignable by the patient and portable. In other words, GMC argues that the definition of a third party in Rule 46.12.304(2)(a), ARM, is inconsistent with its own suggested definition and, as such, provides no notice that VA per diem payments are a third-party liability.

¶31 However, the plain language of Rule 46.12.304(2)(a), ARM, provides specific notice that a public agency will be considered a third party if it is liable to pay all or part of the cost of medical treatment and medical-related services for a person's personal injury, disease or illness. VA is a public agency contributing per diem payments for medical services to individual veterans at EMVH. Under a reasonable interpretation permitted by the wording of the rule, this is sufficient for the VA to qualify as a third party. This Court will not

11

conclude that the rule is invalid or unenforceable simply because GMC submits an alternative definition of third party based on the nonexclusive examples within the rule. We conclude that Rule 46.12.304(2)(a), ARM, provides notice, or a "statement of general applicability," pursuant to § 2-4-102, MCA, which sufficiently identifies those considered third parties.

¶32   Based upon the undisputed facts and a plain reading of the administrative rule, we conclude that DPHHS's interpretation of Rule 46.12.304(2)(a), ARM, is not plainly inconsistent with the spirit nor the plain language of the rule, but lies within the range of reasonable interpretation permitted by the wording. Consequently, DPHHS was correct in concluding that Rule 46.12.304(2)(a), ARM, when read in conjunction with Rules 46.12.304(1) and 46.12.309(1)(c), ARM, requires GMC to report the VA per diem payments as third-party liability payments for purposes of Medicaid reimbursement. We conclude, therefore, that the District Court did not err in determining that the decision of the Board of Public Assistance was legally correct.

¶33   Affirmed.

_____
Justice

12

We concur:

_____
Chief Justice

_____

_____

_____
Justices