No. 98-114

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 184

STATE OF MONTANA,

Plaintiff and Appellant,

v.

DAMON INCASHOLA,

Defendant and Respondent.

APPEAL FROM: District Court of the Twentieth Judicial District,

In and for the County of Lake,

The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Hon. Joseph P. Mazurek, Attorney General,

Jennifer Anders, Ass't Attorney General, Helena, Montana

Kim Christopher, Lake County Attorney,

Robert J. Long, Deputy Lake County Attorney, Polson, Montana


For Respondent:

Rebecca T. Dupuis, C. Edward Hayes, Attorneys at Law,

Polson, Montana


Submitted on Briefs: June 11, 1998

Decided: July 23, 1998

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

**¶1 The State of Montana (State) appeals from the order of the Twentieth Judicial District Court, Lake County, granting Damon Incashola's motion *in limine*. We reverse and remand.**

**¶2 The sole issue on appeal is whether the District Court abused its discretion in suppressing breath test evidence based on its interpretation of an administrative rule.**

¶3 Flathead Tribal Police Officer Dwayne Vollin (Officer Vollin) initiated a traffic stop of a vehicle driven by Damon Incashola (Incashola) on May 2, 1997, after observing that a taillight on the vehicle was out. Noticing that Incashola's eyes were bloodshot and his breath smelled of alcohol, Officer Vollin administered a horizontal gaze nystagmus test and Incashola scored six points, indicating alcohol impairment. Incashola was arrested and transported for a breath test. The breath test, conducted on an Intoxilyzer, indicated a blood alcohol concentration of .129. Officer Vollin's records check reflected that Incashola had three prior convictions for driving under the influence of alcohol.

¶4 The State subsequently charged Incashola with the felony offense of operating a motor vehicle with an alcohol concentration of 0.10 or more. Counsel was appointed for Incashola, he pled not guilty to the charge and a trial date was set.

¶5 Incashola moved to suppress portions of both the videotape taken after his arrest and the interview form on the basis that the evidence therein was obtained in violation of his *Miranda* rights. The District Court granted the motion and, on motion of the State, rescheduled the trial.

¶6 Prior to the trial date, Incashola filed a motion *in limine* contending that the breath test analysis also was inadmissible because the State could not lay a proper foundation under the Administrative Rules of Montana (ARM). He argued that, because no proper field certification was performed on the Intoxilyzer following his breath test, an inference was created under § 23.4.213(1)(i), ARM, that the Intoxilyzer was not in proper working order at the time of his breath test. The State opposed Incashola's motion, arguing that no such inference was created under subsection (1)(i) and, in any event, the field certification of the Intoxilyzer performed on April 29, 1997, was considered valid for 7 days thereafter under § 23.4.213(1)(j), ARM. As a consequence, according to the State, the necessary foundation for admission of the breath test results was established. The District Court granted Incashola's motion *in limine*, effectively suppressing the breath test evidence. The State appealed pursuant to § 46-20-103(2)(e), MCA, which permits an appeal by the State from any court order the substantive effect of which results in suppressing evidence.

¶7 Did the District Court abuse its discretion in suppressing breath test evidence based on its interpretation of an administrative rule?

¶8 Montana closely regulates nearly all aspects of breath, blood and urine analysis procedures used to determine the alcohol concentration in a person charged with an alcohol-related driving offense. *See* §§ 23.4.201 through 23.4.225, ARM. A defendant charged with driving under the influence of alcohol is entitled to the procedural safeguards contained in the ARM, and where the State fails to lay a proper foundation for breath test evidence by complying with those procedural safeguards, the results of the breath test analysis are inadmissible. State v. Woods (Mont. 1997), 947 P.2d 62, 63, 54 St.Rep. 1074, 1075 (citations omitted). In this case, the District Court excluded the breath test evidence based on its conclusion that the State could not lay the foundation required by § 23.4.213, ARM.

¶9 Whether evidence is relevant and admissible is within the broad discretion of the district court and we will not overturn the court's decision absent an abuse of discretion. *Woods,* 947 P.2d at 63, 54 St.Rep. at 1075 (citation omitted). Where, as here, a discretionary ruling is based on a conclusion of law, we review that conclusion to determine whether the court correctly interpreted the law. *See* State v. Pendergrass (1997), 281 Mont. 129, 131, 932 P.2d 1056, 1057 (citation omitted).

¶10 Section 23.4.213, ARM, provides in pertinent part:

Field Certification (1) Breath analysis instruments shall be field certified for accuracy at least once every seven (7) days . . . .

. . . .

(b) field certification is valid when the results of the approved ethyl alcohol solution test is at target value plus or minus one hundredth (.01) grams per two hundred and ten liters. . . .

. . . .

(i) A proper field certification prior to any subject test and a proper field certification following a subject test shall create the inference that the breath analysis instrument was in proper working order at the time of the subject test. (j) A breath analysis instrument's field certification shall be considered valid for seven (7) days forward from the date of a proper field certification.

**While the District Court did not provide a rationale for concluding that the State**

could not lay the necessary foundation for admission of the breath test results under § 23.4.213, ARM, it appears that the court determined that § 23.4.213(1)(i), ARM, created a conclusive negative inference in this case; that is, that the absence of a proper field certification following Incashola's breath test established that the Intoxilyzer was not in proper working order at the time of the test.

¶11 We generally apply the same principles in construing administrative rules as are applicable to our interpretation of statutes. Bean v. State Bd. of Labor Appeals (1995), 270 Mont. 253, 257, 891 P.2d 516, 518-19 (citation omitted). The proper interpretation is first to be determined according to the language therein. *Bean*, 270 Mont. at 257, 891 P.2d at 519. We simply ascertain and declare what is in terms or substance contained in the rule, neither inserting what has been omitted or omitting what has been inserted. Where several provisions or particulars are at issue, we are obligated to construe them to give effect to all, if possible. *See* § 1-2-101, MCA.

¶12 We look, then, to the language contained in § 23.4.213, ARM, and the facts of this case to determine whether the District Court erred in implicitly determining that subsection (1)(i) rendered the breath test results inadmissible for lack of foundation. Section 23.4.213(1)(i), ARM, provides that a proper field certification both before and after the breath test at issue creates an inference that the testing instrument was in proper working order at the time of the test. The language is clear and unambiguous in creating an inference in favor of the instrument being in proper working order under the specified circumstances. Equally clear in this case is that a proper field certification of the Intoxilyzer occurred on April 29, 1997, but that the certification effort on May 4, two days after Incashola's breath test, established that the Intoxilyzer was not working properly. Therefore, no proper field certification occurred after Incashola's test and, as a result, no inference was created under § 23.4.213(1)(i), ARM, that the Intoxilyzer was in proper working order.

¶13 At the same time, however, nothing in § 23.4.213(1)(i), ARM, creates a negative inference--much less the conclusive negative inference apparently ascribed to it by the District Court--that, absent a proper field certification both before and after the breath test at issue, the instrument was *not* in proper working order. To read such a provision into the rule is to ignore the language actually contained therein and to insert language omitted from the rule in derogation of our obligation to refrain from doing so. *See* § 1-2-101, MCA.

¶14 Moreover, the District Court's implicit determination that the absence of a proper field certification after Incashola's breath test rendered the breath test results inadmissible ignores the intended effect of the inference created under § 23.4.213(1)(i), ARM, when proper field certifications do occur both before and after the breath test at issue. An "inference" is "a deduction which the trier of fact may make from the evidence." Section 26-1-501, MCA. Thus, it is clear that the inference created by § 23.4.213(1)(i), ARM, is to be utilized by a trier of fact--at the appropriate stage in the proceedings--in determining whether the testing instrument was in proper working order. In other words, if the evidence establishes that proper field certifications were conducted both before and after the breath test at issue, the trier of fact must infer that the Intoxilyzer was in proper working order. Absent such evidence, no inference is created under § 23.4.213(1)(i), ARM, that the instrument either was or was not in proper working order.

¶15 In any event, however, an inference is a deduction to be made from the evidence and nothing more. Consequently, even if the evidence established proper field certifications before and after the breath test at issue, other evidence could be introduced in an effort to undermine the persuasiveness of the proper field certification evidence and the inference to be drawn therefrom and to establish that the testing instrument was not in proper working order. Likewise, absent evidence of a proper post-breath test field certification, other evidence can be introduced in an effort to prove to the trier of fact that the testing instrument was operating properly at the time of the breath test at issue. By its terms, then, § 23.4.213(1)(i), ARM, is not a foundational requirement for the admissibility of breath test results.

¶16 Furthermore, to conclude that subsection (1)(i) is a foundational requirement for admissibility would judicially nullify subsection (1)(j) of § 23.4.213, ARM, which provides that a field certification is to be considered valid for 7 days forward from the date of the test. When, as here, several provisions of a statute or rule are at issue, we are obligated to construe them to give effect to all of the provisions if possible. *See* § 1-2-101, MCA. Read together, the two subsections at issue here are not a model of clarity. Having determined above that subsection (1)(i) relates to the later evidentiary stage of the proceeding, however, we conclude here that § 23.4.213(1)(j), ARM, is a foundational requirement for admissibility of breath test results. A proper field certification of the testing instrument performed within 7 days before the test at issue constitutes an adequate foundation for admissibility of the breath test results; the absence of such a proper field certification renders the breath test results

inadmissible for lack of foundation. Here, the record establishes that a proper field certification was conducted on April 29, 1997, less than 7 days prior to Incashola's breath test on May 2, 1997.

¶17 Incashola argues, however, that subsection (1)(i) of § 23.4.213, ARM, is a more specific provision than subsection (1)(j). From that premise, he contends that § 1-2-102, MCA, which provides that when a general and particular provision are inconsistent, the particular provision controls, and our cases thereunder, require us to conclude that the District Court's interpretation of subsection (1)(i) is correct. We disagree.

¶18 We determined above that subsection (1)(i) is an evidentiary stage provision, while subsection (1)(j) is a foundational requirement for admissibility. As a result, the two provisions are not a general and particular provision relating to the same matter, but are provisions relating to different stages of the proceeding.

¶19 We conclude that the District Court erred in interpreting § 23.4.213, ARM, and we further conclude that the State laid the necessary foundation for the admission of the breath test results in this case. As discussed, both parties are free to offer other evidence at trial with regard to whether the Intoxilyzer was in proper working order on the date of Incashola's breath test. We hold that the District Court abused its discretion in granting Incashola's motion *in limine*.

¶20 Reversed and remanded for further proceedings consistent with this opinion.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

/S/ WILLIAM E. HUNT, SR.