No. 05-420

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 122

_____

STATE OF MONTANA,

           Plaintiff and Respondent,

   v.

PAULA L. FRICKEY,

           Defendant and Appellant.

_____

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and for the County of Ravalli, Cause No. DC-04-199
The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

           Steven N. Eschenbacher, Attorney at Law, Hamilton, Montana

        For Respondent:

           Hon. Mike McGrath, Attorney General; Jon Ellingson, Assistant Attorney
           General, Helena, Montana

           Kenneth S. Bell, Hamilton City Attorney; Hamilton, Montana

_____

           Submitted on Briefs:  April 5, 2006

                     Decided:  May 31, 2006

Filed:

        _____
                  Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Paula Frickey (Frickey) appeals from her conviction for driving under the influence in the Twenty-First Judicial District, Ravalli County.  We reverse and remand for further proceedings.

¶2     We review whether the "annual" certification requirement of Rule 23.4.214(1), ARM, calls for breath analysis instruments to be laboratory certified once every 365 days or once each calendar year between January 1 and December 31.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     Hamilton police officer Nic Painter (Painter) observed Frickey's vehicle driving erratically in the early morning hours of April 28, 2004.  Officer Painter suspected Frickey of driving under the influence and stopped her car to administer various field sobriety tests.  Frickey failed the field sobriety tests and a preliminary breath test indicated that Frickey's breath alcohol concentration exceeded the legal limit for operating a motor vehicle.  Officer Painter brought Frickey to the Ravalli County Detention Center where Frickey submitted to a breath test on a breath analysis instrument known as the Intoxilyzer 5000.  The test revealed that Frickey had a breath alcohol concentration of .126, above the legal limit.

¶4     The State charged Frickey with driving under the influence in violation of § 61-8-401, MCA.  A jury found her guilty following a one-day trial in Hamilton City Court on August 19, 2004.  Frickey timely filed an appeal to the District Court.  She also filed a motion to suppress the results of the Intoxilyzer 5000 with the District Court.

¶5     Frickey alleged that evidence from the Intoxilyzer 5000 constituted evidence from

2

an uncertified device that violated her right to due process. Frickey contended that when she submitted to a breath test on April 28, 2004, the Intoxilyzer 5000 did not comply with the certification requirements of the Administrative Rules of Montana for breath analysis instruments. The administrative rules require that all breath analysis instruments must be laboratory certified on an "annual" basis. *See* Rule 23.4.214(1), ARM. The Intoxilyzer 5000 had last received laboratory certification more than thirteen months earlier on March 24, 2003. The machine did not receive another laboratory certification until September 3, 2004.

¶6      The administrative rules define "annual" as "yearly or once a year, but does not in itself signify what time in a year." Rule 23.4.201(5), ARM. Frickey argued at the hearing for her motion to suppress that the "annual" requirement in Rule 23.4.214(1), ARM, required that the Intoxilyzer 5000 be certified once every 365 days. The State responded that Rule 23.4.214(1), ARM, required only that the machine be certified at some point during each calendar year, but not necessarily within 365 days of the last certification.

¶7      The State presented the testimony of Dr. Lee Meltzer at Frickey's motion to suppress. Dr. Meltzer works as the Director of the Breath Alcohol program at the Montana State Crime Lab and co-authored the administrative rules pertaining to the certification of breath analysis instruments. Dr. Meltzer testified that he intended for the Intoxilyzer 5000 to be certified only once each calendar year between January 1 and December 31 in order to provide his agency with more flexibility in conducting certifications. He testified that law enforcement agencies submit most machines for

3

testing approximately 12 months after their last certification.

¶8 The District Court agreed with the State's definition of "annual" and denied Frickey's motion to suppress. She then entered into a plea agreement with the State, but reserved the right to appeal the denial of her motion to suppress. This appeal followed.

## STANDARD OF REVIEW

¶9 A district court possesses broad discretion to determine the admissibility of evidence and we will not overturn a court's decision absent an abuse of discretion. *State v. Incashola*, 1998 MT 184, ¶ 9, 289 Mont. 399, ¶ 9, 961 P.2d 745, ¶ 9. When a court bases a discretionary ruling on a question of law, however, we review that conclusion to determine whether the district court correctly interpreted the law. *Incashola*, ¶ 9.

## DISCUSSION

¶10 The State closely regulates the breath analysis instruments used to determine the breath alcohol concentration of a person charged with an alcohol related driving offense through the Administrative Rules of Montana. *State v. Delaney*, 1999 MT 317, ¶ 8, 297 Mont. 263, ¶ 8, 991 P.2d 461, ¶ 8. The administrative rules entitle a defendant charged with driving under the influence to certain procedural safeguards. *State v. Woods* (1995), 272 Mont. 220, 222, 900 P.2d 320, 322. When the State fails to properly establish a foundation for the admission of breath test evidence through compliance with the administrative rules, the results of the breath test may not be admitted. *Incashola*, ¶ 8.

¶11 The State must demonstrate that breath analysis machines have been properly certified in order to establish a foundation for the admission of breath test results. Rule 23.4.214(1), ARM, requires that all "breath analysis instruments shall be returned to the

4

division on an *annual* basis for a laboratory certification." (Emphasis added). The administrative rules define "annual" as "yearly or once a year, but does not in itself signify what time in a year." Rule 23.4.201(5), ARM.

¶12 The State maintains that "annual" under Rule 23.4.214(1), ARM, means once during each calendar year, but not necessarily within 365 days of the last laboratory certification. The State suggests that because the definition of annual does not "signify what time in a year," the breath analysis instruments may be laboratory certified at any time during the subsequent calendar year, regardless of how much time has elapsed since the last certification.

¶13 The State contends that because the Intoxilyzer 5000 had been certified once in 2003 and once in 2004, the machine met the laboratory certification requirements of the administrative rules. Under the State's theory, the administrative rules do not require a breath analysis instrument certified in January to be certified again until December of the next year, some 23 months later. A breath analysis instrument laboratory certified in late December, on the other hand, must be certified within approximately a 12 month period.

¶14 Frickey contends that for the purposes of laboratory certification of the Intoxilyzer 5000, "annual" means once every 365 days. She argues that the District Court improperly denied her motion to suppress because the Intoxilyzer 5000 had not been laboratory certified for over 13 months at the time she submitted to a breath test. The Intoxilyzer 5000 received laboratory certification on March 24, 2003. She submitted to a breath test on April 28, 2004.

¶15 We agree with Frickey that the "annual" requirement of Rule 23.4.214(1), ARM,

requires that breath test machines be laboratory certified once every 365 days. The State asks us to interpret "annual" as once during a period ranging from 12 months to nearly 24 months. The State relies on the language of Rule 23.4.201(5), ARM, which states that it "does not in itself signify what time in a year," to support its claim. Such an interpretation contravenes the language of the rule and illogically places different certification requirements on machines depending upon the date of the last laboratory certification.

¶16    The plain language of Rule 23.4.201(5), ARM, indicates that "annual" means a period of 365 days. The rule defines "annual" as "yearly or once a year." Rule 23.4.201(5), ARM. The plain meaning of once a year is once every 12 months. The dictionary defines a year as a period of about 365 days. American Heritage Dictionary, pg. 2068, (3rd Ed. 1992).

¶17    We do not agree with the State that "yearly or once a year" can be construed as once in nearly 24 months. Rule 23.4.201(5), ARM, does not state that a machine must receive certification only at some point during a calendar year. The plain language of the rule indicates no such intent. It states that annual "means yearly or once a year, but does not in itself signify what time in a year." Rule 23.4.201(5), ARM. We decline to read into the definition of "annual" as under Rule 23.4.201(5), ARM, that the period of a year may begin on January 1 of one year and end on December 31 of the following year. The language of Rule 23.4.201(5), ARM, which states that it "does not in itself signify what time in a year," refers to the fact that the tolling of the "annual" certification will begin at any time during the course of a year that the State certifies a breath analysis instrument.

6

¶18    The nature of the offense of driving under the influence requires this Court to ensure that a defendant receives the protection of the procedures described in the administrative rules. Absolute liability attaches for driving under the influence. *Woods*, 272 Mont. at 222, 900 P.2d at 321. The State need not prove that the defendant acted knowingly, negligently, or purposefully. The blood, breath, or urine tests that reveal a defendant's breath alcohol concentration, therefore, often represent the critical proof necessary to establish commission of the offense. *Woods*, 272 Mont. at 222, 900 P.2d at 321. We conclude that interpreting the administrative rules to require consistency in the testing of breath analysis machines properly reflects the policy of this Court to provide defendants with the procedural protections of the administrative rules. *See Woods,* 272 Mont. at 222, 900 P.2d at 322. A defendant charged with driving under the influence deserves the procedural safeguards contained in the administrative rules to ensure the accuracy of such highly relevant evidence.

¶19    The State contends that we should give deference to Dr. Meltzer's definition of "annually" as a co-author of the administrative rules. We generally apply the same principles in interpreting the administrative rules as we do when interpreting statutes. *Incashola*, ¶ 11. The proper interpretation of an administrative rule must first be discerned through its plain language. *See Incashola*, ¶ 11. The language of Rule 23.4.201(5), ARM, defining "annual" does not represent ambiguous language, however, and consequently this Court need not look any further than the plain meaning of the administrative rules. We need not consider the testimony of Dr. Meltzer.

¶20    The District Court abused its discretion by denying Frickey's motion to suppress evidence of the results of the breath test on the Intoxilyzer 5000. More than thirteen months had elapsed since the last laboratory certification when Frickey submitted to a breath test on April 28, 2004. We conclude that the "annual" requirement of Rule 23.4.214(1), ARM, requires that breath analysis instruments be laboratory certified once every 365 days. The Intoxilyzer 5000 did not comply with the laboratory certification requirement of the administrative rules at the time of Frickey's breath test. The State retains the flexibility to establish a reasonable schedule to certify these instruments on a rolling basis during the course of the year. We reverse and remand to the District Court for further proceedings consistent with this Opinion.

                                                               /S/ BRIAN MORRIS

We Concur:

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART


Justice Jim Rice dissenting.

¶21    I would affirm the District Court.

¶22    To address the issue of the timing of instrument testing, the Department adopted Rule 23.4.201(5), ARM, defining "annual" as "yearly or once a year, but does not in itself signify what time in a year." The term "year" is statutorily defined. As the State correctly notes, § 1-1-301(5), MCA, mandates that "'Year' means a calendar year." Thus, the question is not whether this Court should "read into" the Rule a calendar year

8

meaning. Nor is our task to search the language of the Rule for such an intent. *See* ¶ 17. Rather, the question is whether we can discern any intent within the Rule to *abandon* the law's definition of a "year" as a "calendar year." However, no such purpose can be identified from the language of the Rule.

¶23 If the language can be thought to be uncertain, the testimony about the Rule's adoption is that the Rule was specifically drafted to provide for testing the instruments once each calendar year, to give the Department needed flexibility. It cannot be denied that the language the Department chose to accomplish this purpose was consistent with the statutory meaning of "year."

¶24 The Court's opinion seems to be a reaction against a potential application of the Rule—allowing for testing over a period of up to "24 months." *See* ¶ 17. Of course, in this case, the testing was done within thirteen months. More to the point, given the clear directive of statute, the definition of "annual" adopted by the Rule means "once a [calendar] year, but does not in itself signify what time in a [calendar] year." Admittedly, such a rendering allows for testing over periods up to twenty-four months. However, that is the Legislature's choice and is not ours to change.

¶25 The defendant made no attempt to establish that the instrument involved in this matter, tested at thirteen months, rendered an inaccurate reading or in any way prejudiced her. For these reasons, reversal is unnecessary.

/S/ JIM RICE

Chief Justice Karla M. Gray joins the dissent of Justice Rice.

/S/ KARLA M. GRAY