DA 07-0106

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 352

STATE OF MONTANA,

        Plaintiff and Appellee,

   v.

JOSHUA WAYNE POL,

        Defendant and Appellant.

APPEAL FROM:   District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 06-375
Honorable Edward P. McLean, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

          Scott B. Spencer, Public Defender; Missoula, Montana

       For Appellee:

          Hon. Mike McGrath, Montana Attorney General; John A. Paulson,
Assistant Attorney General; Helena, Montana

          Fred R. VanValkenburg, Missoula County Attorney; Missoula,
Montana

Submitted on Briefs:  February 27, 2008

Decided:  October 21, 2008

Filed:

_____
                     Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1      A jury in the Fourth Judicial District Court, Missoula County, found Joshua Wayne Pol guilty of negligent vehicular assault and vehicular homicide while under the influence of alcohol, and the District Court sentenced him and entered judgment. Pol appeals. We Affirm.

¶2      We address the following issues:

¶3      1.   Did the District Court err in admitting Intoxilyzer evidence over lack of adequate foundation objections?

¶4      2.   Did the District Court err in refusing to instruct the jury on the difference between civil and criminal negligence?

¶5      3.   Did the District Court err in admitting testimony about the extent of the victims' injuries?

## BACKGROUND

¶6      On the evening of August 1, 2006, Pol was driving his pickup truck on a city street in Missoula, Montana. His truck struck a motorcycle carrying two riders, Bernard Kuhns and his wife, Teresa Kuhns. Teresa Kuhns was killed and Bernard Kuhns was injured. Pol drove away without stopping.

¶7      Based on eyewitness statements, the Montana Highway Patrol advised law enforcement officers in Western Montana to be on the alert for a red Ford four-door pickup with out-of-state license plates and damage to its right rear quarter panel. An hour or so later, Mineral County Deputy Sheriff Bill Pandis stopped Pol on an interstate highway about 50 miles from Missoula. Pol initially denied any involvement in the

2

Missoula collision. Pandis noticed, however, that the right rear quarter panel of Pol's truck was damaged, Pol smelled of an alcoholic beverage and Pol's eyes were glassy, red and watery. Montana Highway Patrol Officer Roman Zylawy arrived at the stop, arrested Pol for driving under the influence (DUI) and took him to the Mineral County booking area.

¶8 At the booking area, Pol submitted to a breath test and field sobriety tests. He later gave a blood sample at the Missoula Police Department. Pol eventually admitted his involvement in the collision, and the State of Montana filed an Information charging him with negligent vehicular assault and vehicular homicide while under the influence of alcohol.

¶9 A jury found Pol guilty of both charges and the District Court entered judgment. Pol appeals.

## ISSUE 1

¶10 **Did the District Court err in admitting Intoxilyzer evidence over lack of adequate foundation objections?**

¶11 The determination of whether an adequate foundation exists for the admission of evidence lies within the sound discretion of the district court. Therefore, we review such determinations for an abuse of discretion. *See Town of Columbus v. Harrington*, 2001 MT 258, ¶ 39, 307 Mont. 215, ¶ 39, 36 P.3d 937, ¶ 39.

¶12 To sustain a conviction, the State must prove each element of a charged criminal offense beyond a reasonable doubt. *State v. Price*, 2002 MT 284, ¶ 33, 312 Mont. 458, ¶ 33, 59 P.3d 1122, ¶ 33 (citation omitted). One element of the charge of vehicular

3

homicide while under the influence of alcohol is that the defendant was driving under the influence in violation of § 61-8-401 or 406, MCA. *See* § 45-5-106(1), MCA. Because DUI is a strict liability offense, a test that reveals the defendant's breath alcohol concentration often is the critical proof establishing the defendant was driving under the influence of alcohol. *State v. Frickey*, 2006 MT 122, ¶ 18, 332 Mont. 255, ¶ 18, 136 P.3d 558, ¶ 18.

¶13    In the instant case, the State offered evidence of the results of Pol's breath alcohol test taken on a breath analysis instrument known as the Intoxilyzer 5000. Initially, the prosecutor simply asked Zylawy about the results of the test. Pol's counsel objected, and the District Court instructed the State to lay a foundation for the results. The prosecutor then questioned Zylawy about how a breath test measures alcohol in a person's blood and, after Zylawy answered, again asked Zylawy the results of Pol's breath test. Pol's counsel again objected on lack of foundation grounds. Following that objection, the prosecutor elicited Zylawy's testimony about calibration of the Intoxilyzer 5000 during the breath test and how the breath readings are displayed on the machine, and again asked Zylawy for the results of Pol's breath test. Pol's counsel objected for lack of foundation. At that point, the District Court intervened and inquired whether Zylawy had received training on the breathalyzer and whether he was certified to administer breath tests. Zylawy said he was, and the court overruled Pol's objection. Zylawy then testified that Pol's breath alcohol reading was .16, or twice the legal limit.

¶14    Pol argues on appeal that Zylawy's testimony was insufficient on a stand-alone basis to meet the foundational requirements for admission of the Intoxilyzer 5000 results

4

because Zylawy did not present evidence of either the calibration or the laboratory certification. He relies on Admin. R. M. 23.4.213(1), 23.4.214(1) and *Frickey*, ¶ 16, for the requirement that breath analysis instruments must be field certified once every 7 days and laboratory certified once every 365 days. Pol also relies on *State v. Incashola* to support his argument that where the State does not lay proper foundation for the breath test analysis, the results of the analysis are inadmissible. 1998 MT 18, ¶ 8, 289 Mont. 399, ¶ 8, 961 P.2d 745, ¶ 8.

¶15 In response, the State raises a threshold argument that Pol's lack-of-foundation objections to the breath test results did not alert the District Court to the argument now presented on appeal. The State points out that Pol did not challenge the sufficiency of the foundation for admission of the breath test result prior to trial and advances *State v. Ferguson*, 2005 MT 343, ¶ 63, 330 Mont. 103, ¶ 63, 126 P.3d 463, ¶ 63, in support of its contention that Pol's "broad general objections" did not preserve this issue for appeal.

¶16 We agree that Pol's "broad general objections" did not adequately preserve this issue for appeal. We have repeatedly held that issues presented for the first time on appeal are untimely and we will not consider them. *State v. LaFreniere*, 2008 MT 99, ¶ 11, 342 Mont. 309, ¶ 11, 180 P.3d 1161, ¶ 11 (citation omitted). Furthermore, an "objection must be specific in order to preserve the issue for appeal." *LaFreniere*, ¶ 12. Although Pol's counsel objected three times for lack of foundation, at no time, either in his pretrial memorandum or in his trial objections, did he make a specific objection to the fact that the Intoxilyzer 5000 had not been certified within a one-year period.

¶17 Pol's reliance on *Frickey* is misplaced. In *Frickey*, 2006 MT 122, 332 Mont. 255,

5

136 P.3d 558, the defendant challenged the admissibility of the breath test results by filing a pretrial motion to suppress on the specific grounds that the instrument was not properly certified. The defendant's motion permitted the District Court to examine the laboratory certification and allowed this Court to determine that the administrative requirement for annual certification had not been established.

¶18 Pol also relies on *State v. Incashola*, 1990 MT 18, 289 Mont. 399, 961 P.3d 745, but this reliance is also inaccurate. In *Incashola*, the defendant filed a pretrial motion in limine, arguing the breath test results were inadmissible because the State could not lay a proper foundation for the field certification of the Intoxilyzer. Accordingly, both the District Court and this Court were in a position to examine the certification process and apply the relevant law. The point to be gleaned from *Frickey* and *Incashola* is not that they objected prior to trial, but that they complied with Mont. R. Evid. 103(a)(1) by "stating the specific ground of objection, if the specific ground was not apparent from the context[.]"

¶19 Here, in response to Pol's general "lack of foundation" objections, the trial court received testimony about qualifications of the officer, the procedures undertaken to administer the test to Pol, and the calibration of the Intoxilyzer 5000. In the absence of any further specificity from defense counsel, the court was not required to divine any additional basis for Pol's foundation objection.

¶20 We hold the District Court did not err in admitting Intoxilyzer evidence.

## ISSUE 2

¶21 **Did the District Court err in refusing to instruct the jury on the difference**

**between civil and criminal negligence?**

¶22 We review claims of instructional error in a criminal case to determine whether the jury instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *State v. Swann*, 2007 MT 126, ¶ 32, 337 Mont. 326, ¶ 32, 160 P.3d 511, ¶ 32 (citation omitted).

¶23 This issue relates to the negligent vehicular assault offense. Using an instruction based on Montana Criminal Jury Instruction 2-105, the District Court instructed the jury on the definition of negligence as follows:

> A person acts negligently when an act is done with a conscious disregard of the risk, or when the person should be aware of the risk. The risk must be of a nature and degree that to disregard it involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation. "Gross deviation" means a deviation that is considerably greater than lack of ordinary care.

Pol's counsel proposed an additional instruction on the difference between civil negligence and criminal negligence. The District Court refused the instruction.

¶24 On appeal, Pol claims that, in light of his argument that he was guilty, at most, of ordinary civil negligence and not criminal negligence, it also was necessary for the court to instruct the jury on the difference between the degree of negligence necessary to support a civil action and the degree of negligence necessary to support a criminal conviction. He does not contend, however, that the instruction given by the District Court inaccurately states the applicable law, nor does he advance any authority to support his claim that a criminal defendant is entitled to an instruction on civil negligence.

¶25 Criminal negligence is statutorily defined in § 45-2-101(43), MCA. The

7

instruction given in the present case is substantially similar to the statutory definition, and both the statute and the instruction given state "[t]he risk must be of a nature and degree that to disregard it involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." Thus, in the instruction given it is clear criminal negligence is not the same as ordinary lack of care. Consequently, we conclude the jury instructions, as a whole, fully and fairly instructed the jury on the law applicable to the case.

¶26 We hold the District Court did not err in refusing to instruct the jury on the difference between civil and criminal negligence.

## ISSUE 3

¶27 **Did the District Court err in admitting testimony about the extent of the victims' injuries?**

¶28 District courts have broad discretion in determining the relevance and admissibility of evidence, and we will overturn evidentiary rulings only upon a showing of abuse of that discretion. *State v. Hicks*, 2006 MT 71, ¶ 19, 331 Mont. 471, ¶ 19, 133 P.3d 206, ¶ 19.

¶29 Pol contends the court erred in admitting testimony about both victims' injuries, in light of the stipulation as to Bernie Kuhns' injuries. At the beginning of trial, the District Court read preliminary instructions to the jury, and then read the parties' stipulation to certain facts regarding the collision. The stipulation included that Bernard Kuhns suffered serious bodily injury, as a result of the collision, in that he suffered a broken clavicle. Based on that stipulation, Pol claims on appeal that Kuhns should not have been

allowed to testify about his injuries.  We first recap the portions of Kuhns' testimony at issue here.

¶30    The prosecution's direct examination of Kuhns at trial began with questions about Kuhns' and his wife's activities just before the collision and the facts of the collision, culminating in Kuhns' testimony that he saw Pol's truck coming into his lane of traffic from the front and then woke up on the ground.  Kuhns then testified without objection that, when he woke up, his leg, shoulder and head hurt.  He testified he sustained a broken clavicle and a contusion on his scalp.  The prosecutor's next question was "how was your collarbone treated?"  Pol's counsel objected on relevance grounds, but the court overruled the objection, and Kuhns testified he wore a sling for about five weeks and was given pain and sleep medication.  Kuhns then testified without objection that he was still using sleep medication at the time of trial, because of pain and missing his wife.  The prosecutor next asked Kuhns whether he had to take time off work as a result of the collision, and Pol's counsel again objected on relevance grounds.  The court overruled the objection, and Kuhns testified he had missed about five weeks of work and still was unable to perform all the tasks he normally performed in his job.  Finally, the prosecutor asked Kuhns whether his injuries had impaired his ability to take care of his children, and Pol's counsel objected that the question was irrelevant.  The court overruled the objection and Kuhns testified his mother had taken his youngest son back to West Virginia with her because Kuhns was unable to lift the child.

¶31    Chad Ward, who witnessed the collision, testified that he stopped his car and went over to the two people who were on the motorcycle.  The Prosecutor asked Ward what he

saw and Ward testified, without objection, that he got to the man first and saw that he had a huge gash on his head. He stated he then looked at the woman who was lying ten or twelve feet away on her stomach and a saw a pool of blood forming under her head, so went and knelt over her to see if there was anything he could do. The Prosecutor asked, "[a]nd what happened then?" Pol objected on grounds of relevance and Rule 403. The court overruled the objection. Ward stated that the woman was bleeding from her nose and the side of her head and that he yelled to someone to bring some towels. He stated that the woman had a pulse but did not appear to be breathing and that she appeared to be in very dire shape and he wasn't comfortable doing anything else.

¶32 In support of his argument that Kuhns' and Ward's testimonies were inadmissible, Pol advances cases addressing the admission of otherwise relevant photographs, in which the issue was whether the probative value of the photographs was outweighed by their prejudice to the defendant. *See State v. Mayes*, 251 Mont. 358, 371, 825 P.2d 1196, 1204 (1992); *State v. Henry*, 241 Mont. 524, 531, 788 P.2d 316, 320 (1990). In that regard, we have long recognized the special visual capacity of photographs to arouse human feelings of sympathy or prejudice. *See e.g. State v. Bischert*, 131 Mont. 152, 308 P.2d 969 (1957).

¶33 The special visual capacity of photographs is not at issue in the present case, and Pol concedes he has not located Montana law directly on point in support of his argument. The appellant bears the burden of establishing error. *State v. Buck*, 2006 MT 81, ¶ 31, 331 Mont. 517, ¶ 31, 134 P.3d 53, ¶ 31 (citation omitted). We hold that, while the challenged responses were arguably cumulative to the stipulated facts, Pol has failed

10

to establish that the court abused its discretion in allowing them.

**CONCLUSION**

¶34    We affirm Pol's negligent vehicular assault conviction and vehicular homicide while under the influence of alcohol conviction.


/S/ W. WILLIAM LEAPHART


We concur:


/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ JIM RICE


Chief Justice Karla M. Gray, specially concurring.


¶35    Having signed the Court's opinion, I write separately to make a point I believe is of critical importance.

¶36    In this case, defense counsel made three objections to Zylawy's testimony about the test results.  After the third objection, and without ruling on it, the District Court intervened and inquired whether Zylawy was certified to administer breath tests; Zylawy said he was, and the court overruled Pol's objection.

¶37    It is my view that the District Court's intervention in aid of the State's efforts to lay an adequate foundation was entirely inappropriate.  Courts are obligated to be

11

impartial and neutral. In situations such as presented here, the court's sole job was to rule on defense counsel's objection. Instead, it weighed in on behalf of the prosecution and, having done so, overruled the objection. In doing so, I believe the District Court violated the most fundamental principles which separate judges from parties and which define our system of justice.

/S/ KARLA M. GRAY

Justice James C. Nelson joins in the foregoing special concurrence of Chief Justice Gray.

/S/ JAMES C. NELSON