FILED

09/12/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0206

DA 15-0206

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 228N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JOSEPH LEE DONEY,

      Defendant and Appellant.

APPEAL FROM:     District Court of the Thirteenth Judicial District,
                    In and For the County of Yellowstone, Cause No. DC 13-945
                    Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Chief Appellate Defender, Kristen L. Peterson, Assistant
            Appellate Defender, Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman,
            Assistant Attorney General, Helena, Montana

            Scott Twito, Yellowstone County Attorney, Christopher Morris, Deputy
            County Attorney, Billings, Montana

                        Submitted on Briefs:  June 28, 2017
                              Decided:  September 12, 2017

Filed:

                                            Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Joseph Lee Doney appeals his jury conviction and judgment in the Thirteenth Judicial District Court, Yellowstone County, for one count felony assault with a weapon. We address the following issues:

> *Issue One: Whether the District Court abused its discretion by excluding Krengel's testimony regarding statements Tsosie made to Krengel.*
>
> *Issue Two: Whether the District Court abused its discretion by allowing the investigating detective to testify regarding a witness's out-of-court statements.*
>
> *Issue Three: Whether the Court should exercise plain error review of Doney's claim of prosecutorial misconduct.*
>
> *Issue Four: Whether Doney established cumulative error to warrant reversal.*
>
> *Issue Five: Whether remand is necessary to enter an amended judgment regarding community supervision conditions.*

We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

**The Incident**

¶3     Around 1:00 p.m. on July 10, 2013, Donald Cyphers, II, left the Holiday convenience store at the corner of North 27th Street and North 6th Avenue in downtown

Billings.  Cyphers merged into the right lane as he approached a construction zone, and then noticed the driver of a white Pontiac Grand Am with tinted windows leaning out of the window yelling at him.  Once the left lane construction zone ended, the Pontiac accelerated into the left lane to catch up to Cyphers.  The passenger's window of the Pontiac was cracked open about four inches, down to a little higher than the passenger's eye line.  Cyphers testified the passenger of the Pontiac leaned forward and smacked a gun up against the window of the Pontiac, pointing it at him.  The passenger, who Cyphers identified as male, had the gun in his left hand, and his finger was in the trigger guard.

¶4      Cyphers pulled over his vehicle and called his father.  As Cyphers prepared to call police to report the incident, he noticed Montana Highway Patrol Captain Edward Hilbert approach in an unmarked car.  Captain Hilbert observed Cyphers' car stopped on the shoulder.  Cyphers yelled at Captain Hilbert that "These guys just pulled a gun on me," indicating the Pontiac a few cars ahead.  The Pontiac then drove into oncoming traffic to pass the cars stopped at the traffic light and crossed the intersection against the red light.  Captain Hilbert pursued the Pontiac, which was traveling between 70 and 80 miles per hour, until he lost sight of it as it turned onto Riverside Road.

¶5      Captain Hilbert asked a woman parked on Riverside Road whether she saw a white car go past.  The witness stated she observed the car speed past, pull off to the side of the road, and three people jumped out.  She also told Captain Hilbert she had previously seen the same car parked at the trailer behind hers.  The Pontiac was still running and the driver's door ajar when Captain Hilbert reached it.  Captain Hilbert knocked on the trailer the

3

witness had directed him to, but nobody answered. Law enforcement was unable to locate the three occupants of the Pontiac that day, and the car was impounded.

**The Investigation**

¶6 Billings Police Department Detective Hallam investigated the incident. Among other witnesses, Detective Hallam interviewed Heather Krengel. Krengel was the registered owner of the Pontiac. At the time of this incident, Krengel and Doney were living together and both Krengel and Doney drove the Pontiac. Krengel was Doney's alibi witness at trial. Detective Hallam testified that when he interviewed Krengel, she told him that Robert Meza and his girlfriend, Edwina Tsosie, had the Pontiac at the time of the incident. Doney and Meza were friends, and, one or two days before the incident, Meza had borrowed the Pontiac to perform repairs. Krengel did not state to Detective Hallam that Doney was with her at the time of the incident.

¶7 Detective Hallam also interviewed Carisa Banda. Banda is Meza's niece. At the time of the incident, Meza and Tsosie, lived together in a trailer owned by Banda. Banda's trailer is the trailer the witness had indicated to Captain Hilbert that she had previously observed the white Pontiac parked. When interviewed by Detective Hallam, Banda stated that Doney was in the Pontiac during the incident.

**The Trial**

¶8 At trial, the State called Captain Hilbert, Cyphers, Tsosie, and Detective Hallam.

¶9 Cyphers was unable to identify Doney as the passenger who pointed the gun at him.

¶10 Tsosie testified Doney called and requested Krengel's Pontiac back, and that Tsosie and Meza returned the car to Doney and Krengel's residence around the noon hour. On

4

the day of the incident, phone records indicated either Meza or Tsosie, who shared a cell phone at the time, called Doney at 11:11 a.m. Doney called back at 11:51 a.m., 12:20 p.m., and 12:24 p.m. Tsosie stated that after visiting for a while, Meza and Tsosie asked for a ride back to Banda's trailer, at which time Meza drove, Doney sat in the front passenger seat, and Tsosie sat in the back seat. Tsosie testified that following the incident, she went to Krengel's residence and told Krengel "[Meza] took us on a high-speed chase and they towed your car away, and they're back at [Banda]'s in the trailer."

¶11 Doney called Krengel as his only witness. In contrast to Tsosie's testimony, Krengel testified that Doney left with his cousin in the afternoon while she [Krengel] slept in. Krengel stated Tsosie show up in the late afternoon and she was upset. The State objected to Krengel's testimony that, during their conversation, Tsosie did not tell Krengel that Doney was in the car and involved in the incident. Doney argued the statement should come in as a prior inconsistent statement because Tsosie previously testified that she told Krengel that Doney was in the car and involved. The District Court sustained the State's hearsay objection.

¶12 Before trial, the District Court granted Doney's motion to exclude as hearsay any statements made by Banda to Detective Hallam. During cross-examination, however, Doney's counsel asked Detective Hallam if he was skeptical of Tsosie's statements that placed Doney in the car at the time of the incident. Detective Hallam responded that he was not, to which Doney's counsel followed up: "Even though nobody else has said that [Doney] was in the car?" On redirect examination, the State asked Detective Hallam whether, in addition to Tsosie, Banda placed Doney in the car as well. Doney objected to

Banda's statement as hearsay and the Court sustained the objection. Continuing with its redirect, the State elicited from Detective Hallam that he did not rely only on Tsosie's statement to place Doney in the car, but that he relied on the totality of the facts, including Banda's statement. Doney again objected. The District Court overruled the objection on the basis that "[Detective Hallam] is just saying what he has used [to conclude that Doney was in the car], that's not going into what [Banda] said."

## STANDARDS OF REVIEW

¶13 We review a district court's rulings on admissibility of the evidence for an abuse of discretion, which occurs if the district court acts arbitrarily or unreasonable and substantial injustice results. *State v. Jenkins*, 2011 MT 287, ¶ 4, 362 Mont. 481, 265 P.3d 643. "When a court bases a discretionary ruling on a question of law, however, we review that conclusion to determine whether the district court correctly interpreted the law." *State v. Frickey*, 2006 MT 122, ¶ 9, 332 Mont. 255, 136 P.3d 558.

¶14 Our review is plenary for questions regarding constitutional law. *State v. Baker*, 2013 MT 113, ¶ 17, 370 Mont. 43, 300 P.3d 696.

¶15 We will exercise plain error review of an issue not raised before the district court "in situations that implicate a defendant's fundamental constitutional rights when failing to review the alleged error may result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process." *State v. Hayden*, 2008 MT 274, ¶ 17, 345 Mont. 252, 190 P.3d 1091.

## DISCUSSION

6

¶16     *Issue One: Whether the District Court abused its discretion by excluding Krengel's testimony regarding statements Tsosie made to Krengel.*

¶17     Doney argues the District Court erred in excluding Krengel's testimony that Tsosie did not tell her Doney was in the car during their conversation immediately after the incident, even though Tsosie previously testified she told Krengel that Doney was present. Doney argues that Krengel's statement was admissible as a prior inconsistent statement.

¶18     The testimony and objection at issue went as follows:

Q [by Doney's counel]: What did you tell [Doney] happened?

A: I just told him that [Tsosie] had came, told me the car was impounded, that they had gotten in a high-speed chase with the police, and there was a gun involved, and that it had been impounded and that he needed to talk to [Meza].

Q: Did you tell [Doney] that [Tsosie] had said that he was in the car?

A: No, because she didn't say that.

Q: When she came over, she did not tell —

A: Huh-uh.

[PROSECUTOR]: Judge, I'm going to object again.  The hearsay is pretty clear here.

THE COURT: Sustained.

¶19     The State argues that Doney did not demonstrate that Tsosie's statement to Krengel was inconsistent with Tsosie's trial testimony and that, even if it was, the testimony was admitted in any event.  We agree.  Addressing first whether Tsosie's statement to Krengel—including her failure to specifically name Doney as being present in the car— was inconsistent with her trial testimony.  In response to the question as to whether she

told Krengel that Doney and Meza were in the car, Tsosie testified: "Yeah, because *we* were all in there. I said, [Meza] took *us* on a high-speed chase and they towed your car away, and they're back at [Banda]'s in the trailer." (Emphasis added). Simply because Tsosie used the collective pronoun "we" and "us" in her statement to Krengel does not establish that Tsosie never identified Doney as being in the car during the incident. Moreover, as the State correctly points out, Krengel's testimony that Tsosie did not tell her that Doney was in the car was admitted into evidence without objection. When Krengel was initially asked, whether she told Doney that Tsosie had stated he was in the car, she responded, "No, because she didn't say that." It was only when Doney's counsel sought to reiterate the point that the State's hearsay objection was sustained.

¶20 The District Court did not abuse its discretion by sustaining the State's hearsay objection to Krengel's testimony.

¶21 *Issue Two: Whether the District Court abused its discretion by allowing Detective Hallam to testify regarding statements Banda made to him.*

¶22 Doney argues the District Court erred by allowing Detective Hallam to testify that he relied on Banda's statement to conclude Doney was in the car. Doney contends that the error was not harmless because the evidence undermined the District Court's curative instruction and directly corroborated Tsosie and contradicted Krengel. The State argues Doney's counsel invited the error when she misrepresented the content of Banda's out-of-court statement on Detective Hallam's cross-examination. The State contends the testimony was admissible either because it was not hearsay, or pursuant to the doctrine of curative admissibility.

8

¶23 "Under the rule of curative admissibility, or the 'opening the door' doctrine, the introduction of inadmissible evidence by one party allows an opponent, in the court's discretion to introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission." *Stevenson v. Felco Indus.*, 2009 MT 299, ¶ 40, 352 Mont. 303, 216 P.3d 763 (quoting *United States v. Whitworth*, 856 F.2d 1268, 1285 (9th Cir. 1988)). The State did not elicit Banda's statement to Detective Hallam that Doney was in the car during its direct examination. It was only after Doney's counsel suggested during cross-examination that Detective Hallam should have been skeptical of Tsosie's statement placing Doney in the car because "nobody else has said that [Doney] was in the car," that the State attempted on redirect to enter into evidence that Banda also placed Doney in the car. The District Court initially sustained Doney's objection to this testimony but then allowed Detective Hallam to testify that he relied on the totality of the facts, including Banda's statement, in determining that Doney was present in the car. This testimony was given in rebuttal to Doney's suggestion that Detective Hallam had engaged in a rush to judgment, in part because nobody other than Tsosie placed Doney in the car.

¶24 Doney opened the door to this testimony. Limited as the testimony was, the District Court did not abuse its discretion in allowing Detective Hallam's testimony on statements he relied on in his investigation to rebut Doney's misrepresentation that no one else stated Doney was in the car.

¶25 *Issue Three: Whether plain error review is appropriate regarding Doney's claimed prosecutorial misconduct.*

¶26 Doney argues the prosecutor committed misconduct in closing argument by repeatedly focusing the jury on facts outside the record and on Detective Hallam's charging decision and opinion of guilt. *See Hayden*, ¶ 27; *see also State v. Chafee*, 2014 MT 226, ¶ 27, 376 Mont. 267, 332 P.3d 240 (determining prosecutors cannot refer to matters outside the record, misrepresent the law to the jury, or tell the jury to base its decision on factors other than the law and evidence admitted at trial). Doney contends the prosecutor told the jury to disregard evidentiary rules and rely on Detective Hallam's decision to charge Doney, because Detective Hallam "became convinced and more convinced with each witness that he talked to and learned information from . . . Would he submit a case for prosecution if he wasn't completely convinced? Of course not. Of course he was convinced." Doney also contends the prosecutor's statement to the jury to assume Tsosie's trial testimony was consistent with her initial statement to authorities constituted misconduct because it relies on facts outside the record. Finally, Doney argues the prosecutor's closing argument in which he told the jury "to go back, deliberate this case and find him guilty," without reminding the jury to acquit in the absence of proof beyond a reasonable doubt, undermined the fairness of Doney's trial. *See Hayden*, ¶¶ 27-28. Because Doney did not raise the issue of prosecutorial misconduct before the District Court, the burden is on Doney to show that "failing to review the alleged error may result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process." *Hayden*, ¶ 17.

¶27 The State argues Doney has not met his burden to show this is the rare case requiring the discretionary exercise of plain error review to prevent a miscarriage of justice. The

10

State contends an attorney may comment on evidence of the case and draw reasonable inferences from evidence so long as facts support such argument. *See State v. Bashor*, 188 Mont. 397, 417, 614 P.2d 470, 481 (1980). The State points out the prosecutor also told the jury that "[w]hat it's going to come down to and what you get to decide is the credibility of the witnesses," and that the jury should decide "those issues, and you get to process and figure out which path to go." The District Court also instructed the jury that Doney was presumed innocent and that the State bore the burden of proving the elements of the offense beyond a reasonable doubt.

¶28 We agree with the State that, taken as a whole and reviewed in context, the prosecutor's statements during closing arguments were not outside the wide latitude that a prosecutor is allowed when discussing evidence before the jury and responding to opposing counsel's attack of the State's case. *Bashor*, 188 Mont. at 417, 614 P.2d at 481. The District Court instructed the jury that "[t]he function of the jury is to decide the issues of fact resulting from the charge filed in this Court by the State and the Defendant's plea of 'not guilty' to the charge," and that "[t]he jurors have a duty to consult with one another and to deliberate for the purpose of reaching an agreement, if it can be done without violence to individual judgment." The prosecutor's single statement—that the jury's job was to find Doney guilty—did not eclipse the District Court's instructions to the jury and compromise the integrity of the judicial process.

¶29 As to Doney's other contentions that include the prosecutor soliciting testimony from Detective Hallam regarding statements made to him by Tsosie and Banda, those are evidentiary issues that do not rise to the level prosecutorial misconduct.

¶30 Doney failed to firmly convince this Court that any of the prosecutor's statements or actions, individually or in combination, resulted in a manifest miscarriage of justice.

¶31 *Issue Four: Whether Doney established cumulative error to warrant reversal.*

¶32 Doney argues his conviction is based on facts not admitted into evidence, in addition to Detective Hallam's opinion, and these errors cumulatively rendered his trial fundamentally unfair. Doney contends the prosecutor's repeated misconduct undermined the fairness of the trial and created a clear danger that the jury did not base its decision on its independent judgment, but rather on Detective Hallam's opinion and facts outside the record. *See State v. Ferguson*, 2005 MT 343, ¶ 126, 330 Mont. 103, 126 P.3d 463. The State responds that Doney failed to establish that multiple errors prejudiced his right to a fair trial. *See State v. Novak*, 2005 MT 294, ¶¶ 34-36, 329 Mont. 309, 124 P.3d 182. We agree. As we held in *Novak*, it is not appropriate to reach the issue of cumulative error where this Court has considered each of the claimed errors and determined they do not amount to trial error. *Novak*, ¶ 36. As discussed above, the District Court did not commit reversible error in the individual instances Doney assigns; thus, there can be no cumulative error.

¶33 *Issue Five: Whether remand is necessary to enter an amended judgment regarding community supervision conditions.*

¶34 Finally, Doney argues the District Court illegally imposed conditions that apply "for any period of community supervision." Doney contends that the District Court is proscribed from imposing conditions of parole or conditional release. *See State v. Birthmark*, 2013 MT 86, ¶ 23, 369 Mont. 413, 300 P.3d 1140. Thus, to the extent that

12

"community supervision" could be interpreted as including parole or conditional release, the sentence is illegal and his sentence must be remanded to amend the judgment for that clarification.

¶35 The State responds that the conditions pertaining to monetary obligations and any other limitation reasonably related to the objectives of rehabilitation and the protection of the victim and society statutorily apply during the entire period of Doney's sentence, including periods of incarceration and community supervision, regardless of the nature of that supervision. The State contends that the requirements that Doney register as a violent offender and provide a DNA sample are self-executing pursuant to statute. As to those conditions that, by their nature, would apply only to Doney's conduct while released in the community, the State contends that they properly apply to the suspended portion of Doney's sentence, but are nothing more than recommendations as to any other period of community supervision, such as parole or conditional release.

¶36 We review sentences for legality to determine whether they are within statutory parameters. *State v. Hicks*, 2006 MT 71, ¶ 41, 331 Mont. 471, 133 P.3d 206. It is well-established that a District Court cannot impose conditions to apply to any term of parole or conditional release. *Birthmark*, ¶ 23 (citing *State v. Burch*, 2008 MT 118, ¶¶ 24-26, 342 Mont. 499, 182 P.3d 66). Because it is well-established, the only reasonable interpretation of "community supervision" cannot include parole or conditional release. Thus, clarification is not required and it is not necessary to remand the judgment for amendment.

**CONCLUSION**

13

¶37 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of this Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. The District Court's rulings were not an abuse of discretion, and its interpretation and application of the law were correct. Further, having reviewed the briefs and the record on appeal, we conclude that the Doney has not met his burden of persuasion. We affirm.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ JIM RICE