

DA 10-0149

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 2

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

PAUL CLIFFORD GIESER,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC-08-102C
Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Hillary Prugh Carls; Angel, Coil & Bartlett, Bozeman, Montana

      For Appellee:

      Steve Bullock, Montana Attorney General; Micheal S. Wellenstein,
Assistant Attorney General, Helena, Montana

      Marty Lambert, Gallatin County Attorney, Eric Kitzmiller, Deputy County
Attorney, Bozeman, Montana

Submitted on Briefs:  December 8, 2010

Decided:  January 4, 2011

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1   Paul Gieser appeals from his June 4, 2009, conviction for driving under the influence of alcohol.  We reverse and remand for a new trial.

## BACKGROUND

¶2   At about 11:00 a.m. on April 17, 2008, a citizen was forced off the road by a truck that pulled out of a casino parking lot and swerved in front of his car near Gallatin Gateway, Montana.  The citizen followed the truck, bearing a "LZYWOLF" personalized license plate and after observing the truck driving erratically, called 911.

¶3   Gallatin County Deputy Tom Madsen soon located the LZYWOLF truck and made a traffic stop.  Gieser was the driver of the truck, and Madsen smelled a strong odor of alcohol coming from him, noted that his eyes were bloodshot and watery, and that Gieser slurred his words.  Deputy Madsen asked for identification and had to help Gieser locate it in his wallet.  Gieser was unsteady on his feet and with some difficulty was able to recite the alphabet starting with "C."

¶4   Deputy Madsen administered the Horizontal Gaze Nystagmus (HGN) test, designed to detect fluttering eye movements that can indicate that the subject is under the influence of alcohol.  Madsen determined that Gieser attained the maximum score on the HGN test, indicating alcohol impairment.  Gieser performed poorly on the walk-and-turn test, also indicating that he was under the influence of alcohol.

¶5   Deputy Madsen then read Gieser the Preliminary Alcohol Screening Test advisory and asked him to provide a breath sample for analysis in a Portable Breath Test

2

apparatus. Gieser told Madsen that he had consumed three beers and agreed to give the sample. Because Madsen's PBT apparatus was not currently certified, he used a certified apparatus belonging to a Highway Patrol officer who was on the scene. Gieser did not provide a usable breath sample, and Madsen believed that Gieser was deliberately not cooperating with instructions.

¶6 After failing to get a usable breath sample on the Highway Patrol officer's apparatus, Deputy Madsen used his own PBT apparatus even though it was out of certification. The result of the second testing was a blood alcohol concentration of .182. Madsen then arrested Gieser for DUI and took him to the Law and Justice Center, where Gieser refused to provide a breath sample to the Intoxalyzer 8000. At the Center Gieser told Madsen that he had not eaten since the night before; that he had started drinking at a casino at 10:30 a.m.; and that he had two light beers.

¶7 At trial the prosecution offered and the District Court received without defense objection Deputy Madsen's testimony that Gieser's blood alcohol concentration as tested on the un-certified apparatus was .182. The prosecution also offered and the District Court received without defense objection Madsen's testimony about the administration and results of the HGN test. The prosecution did not offer any expert testimony in support of the results of the HGN test.

¶8 The jury convicted Gieser of DUI. On January 27, 2010 the District Court sentenced Gieser to the Department of Corrections for 13 months, and to an additional 5-year term with the DOC, suspended, for the offense of felony DUI. Section 61-8-731, MCA. Gieser appeals.

3

**DISCUSSION**

¶9 Gieser raises several issues on appeal that are not determinative and that do not warrant reversal. However, Gieser argues that he received ineffective assistance of counsel at trial, and we reverse based upon that issue. This Court evaluates claims of ineffective assistance of counsel using the test in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). Under *Strickland*, a defendant can prevail on a claim of ineffective assistance of counsel by demonstrating that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *Whitlow v. State*, 2008 MT 140, ¶¶ 10-11, 343 Mont. 90, 183 P.3d 861.

¶10 The first instance of ineffective assistance of counsel arises from Deputy Madsen's testimony describing the administration and results of the HGN test. The established rule in this State is that the proper evidentiary foundation for admission of the results of an HGN test is a showing that the test was properly administered by the officer, along with expert testimony demonstrating "a scientific basis for the reliability of the test results." *City of Missoula v. Robertson*, 2000 MT 52, ¶ 44, 298 Mont. 419, 998 P.2d 144; *Hulse v. State*, 1998 MT 108, ¶ 72, 289 Mont. 1, 961 P.2d 75. The State concedes on appeal that the prosecution failed to present expert testimony regarding the scientific correlation between alcohol consumption and the results of the HGN test. The State further concedes that Gieser's trial counsel's performance was deficient because "she failed to move to exclude the test results on the grounds that the State failed to present expert testimony on the scientific basis of the HGN test."

¶11 The second instance of ineffective assistance of counsel arises from the admission of the results of the breath test taken from Deputy Madsen's out-of-certification PBT apparatus. The State of Montana closely regulates the instruments that law enforcement officers use to administer breath tests to determine blood alcohol concentration, and requires training and certification of the officers who administer the tests. *State v. Delaney*, 1999 MT 317, ¶ 8, 297 Mont. 263, 991 P.2d 461; *State v. White*, 2009 MT 26, ¶ 8, 349 Mont. 109, 201 P.3d 808; § 61-8-409(7), MCA. The instruments must be regularly inspected and calibrated, on a yearly basis by the Forensic Science Division of the Montana Department of Justice, and on a weekly basis by the local law enforcement agency. *White*, ¶ 8. Precision in these instruments is important because under § 61-8-401(4)(c), MCA, when a person's blood alcohol concentration is .08 or more, there is a rebuttable inference that the person was under the influence of alcohol.

¶12 The Deputy Madsen used his un-certified apparatus in the field to obtain a blood alcohol concentration for Gieser of .182.[1] Gieser's trial attorney did not object to the evidence or otherwise seek to exclude the Deputy's testimony on the results of the breath test. The State concedes that this was deficient representation by Gieser's attorney, and that if she had moved to exclude the breath test evidence, it "would not have been admitted at trial."

¶13 Despite conceding that Gieser's attorney's performance was deficient, the State contends that Gieser has not shown that he was prejudiced and is not entitled to reversal

---

[1] The Deputy's apparatus was not currently certified at the time of the arrest, but had been certified in the past and was re-certified after the arrest.

of his conviction because there was other evidence properly before the jury to support a conviction.

¶14 Under *Strickland,* a defendant can prevail on a claim of ineffective assistance of counsel by demonstrating that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *Whitlow*, ¶ 10. Here, the State has conceded that defense counsel's performance was deficient, so the only issue is whether Gieser was prejudiced. The defendant must demonstrate that there is a reasonable probability that the result of the proceeding would have been different but for counsel's deficiencies. *Strickland*, 466 U.S. at 649, 104 S. Ct. at 2064. The State can then try to establish that the error was harmless by showing that there was admissible evidence that proved the same facts as the tainted evidence, and that qualitatively, the tainted evidence would not have contributed to the conviction. *State v. Larson*, 2010 MT 236, ¶ 50, 358 Mont. 156, __ P.3d __. Only prejudicial error requires reversal. Section 46-20-701(1), MCA.[2]

¶15 Here, the State points to other evidence that tended to prove that Gieser was intoxicated: the odor of alcohol, bloodshot and watery eyes, slurred speech, impaired coordination, and difficulty finding his license. While this evidence was properly admitted and the jury could have relied upon it to conclude that Gieser was intoxicated, the HGN and breath test evidence was qualitatively different. The breath test produced a definite number that represented the level of alcohol in Gieser's body, and the District

---

[2] The evidentiary errors here were "trial" errors "amenable to qualitative assessment" on appeal. Trial error is not presumptively prejudicial, does not require automatic reversal, and is subject to review for harmless error. *State v. Van Kirk,* 2001 MT 184, ¶ 40, 306 Mont. 215, 32 P.3d 735.

Court instructed the jury pursuant to § 61-8-401(4)(c), MCA, that they could use this number to infer that Gieser was intoxicated. Similarly, Deputy Madsen testified that the HGN test was based upon the premise that "your eyes are an indicator" of intoxication that can be detected by observing the eyes as they track a moving object. Madsen testified that Gieser "maxed the test" by getting the most possible points.

¶16 These two tests have an appearance of precision and scientific reliability that is qualitatively different from the more subjective observations of the officer as to speech, eyes, coordination and odors. Not only was the HGN and breath test evidence qualitatively different, but in addition none of the other evidence purported to measure or scientifically detect bodily reactions or conditions. Deputy Madsen testified that the breath test was done with an "instrument that we have that through taking a person's breath, you can get a measurement of the alcohol—blood alcohol—content." This Court has recognized that "a test that reveals the defendant's breath alcohol concentration often is the critical proof establishing the defendant was driving under the influence of alcohol." *State v. Pol*, 2008 MT 352, ¶ 12, 346 Mont. 322, 195 P.3d 807; *State v. Frickey*, 2006 MT 122, ¶ 18, 332 Mont. 255, 136 P.3d 558. The ordinary person has little to no understanding about or knowledge of horizontal gaze nystagmus or of alcohol concentration measured in "either grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath." Section 61-8-407, MCA. Under these circumstances, we conclude that there is a reasonable probability that the HGN and breath test evidence contributed to the verdict, and that there was no other evidence indicating intoxication that proved the same thing. *State v. Van Kirk*, 2001 MT 184, ¶ 45, 306 Mont. 215, 32

7

P.3d 735; *State v. Reichmand,* 2010 MT 228, ¶¶ 23-27, 358 Mont. 68, __ P.3d __.

Therefore, admission of the HGN and breath test evidence was not harmless.

¶17    We reverse the conviction in this case and remand for retrial.


                                          /S/ MIKE McGRATH


We concur:


/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS