DA 11-0541

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 250

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

RUBEN CHAVEZ-VILLA,

        Defendant and Appellant.

APPEAL FROM:     District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 10-0676
Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Wade Zolynski, Chief Appellate Defender; Koan Mercer, Assistant Appellate
Defender, Helena, Montana

        For Appellee:

            Steve Bullock, Montana Attorney General; Tammy K Plubell, Assistant
Attorney General, Helena, Montana

            Scott Twito, Yellowstone County Attorney, Billings, Montana

Submitted on Briefs:   August 15, 2012

Decided:   November 7, 2012

Filed:

                           Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Ruben Chavez-Villa (Chavez-Villa) appeals his conviction from the Thirteenth Judicial District, Yellowstone County, for driving under the influence in violation of § 61-8-401, MCA.  We affirm.

¶2     Chavez-Villa's appeal presents the following issues:

¶3     *Whether the District Court properly allowed the results of the horizontal gaze nystagmus and preliminary breath test to be admitted at trial without expert testimony to establish the reliability of the tests.*

¶4     *Whether the District Court properly excluded cross-examination about Chavez-Villa's blood alcohol content before Trooper Munson administered the Intoxilyzer 8000 test.*

**Factual and Procedural Background**

¶5     The Yellowstone County Sheriff's Office and the Montana Highway Patrol responded to a call of a suspected drunk driver on the morning of December 26, 2010.  Timothy Ferch (Ferch) had been driving on Interstate 94 when he noticed the vehicle in front of him weaving back and forth in the roadway.  Trooper Munson later identified Chavez-Villa as the driver of this vehicle.  Ferch saw Chavez-Villa's vehicle veer into the other lane, forcing a vehicle in that lane onto the shoulder to avoid being hit.  Ferch followed Chavez-Villa as he exited the freeway.  Ferch watched Chavez-Villa roll through a red light.  Chavez-Villa did not stop until his vehicle was a car length into the intersection.  Chavez-Villa then pulled into a gas station parking lot.  Ferch called 911 to report Chavez-Villa's erratic driving.

¶6     Deputy Hackbarth of the Yellowstone County Sheriff's Department and Trooper Munson of the Montana Highway Patrol responded to Ferch's call.  Deputy Hackbarth and

Trooper Munson located Chavez-Villa inside a casino near the gas station. Trooper Munson smelled the odor of alcohol on Chavez-Villa's breath and noticed that Chavez-Villa's eyes were glassy and watery. Chavez-Villa seemed unstable on his feet and used a wall for support. Deputy Hackbarth noted Chavez-Villa's slurred speech, his glassy eyes, and the odor of alcohol on his breath.

¶7 Trooper Munson had Chavez-Villa perform one field sobriety test, the horizontal gaze nystagmus (HGN) test. The weather at the scene was cold, windy, and icy, so Trooper Munson did not conduct any additional field sobriety tests. Trooper Munson also had Chavez-Villa take a preliminary breath test (PBT).

¶8 Trooper Munson's onboard video camera recorded these two tests. Trooper Munson and Chavez-Villa were not visible on the film, but the camera captured their dialogue. The court admitted the video at trial. The audio from the video includes Trooper Munson conducting the HGN and the PBT tests. Trooper Munson can be heard telling Chavez-Villa, "if you haven't had anything to drink, this will show it" right before he administered the PBT. Trooper Munson also told Chavez-Villa that if Chavez-Villa was not over the legal blood alcohol limit, Chavez-Villa would be allowed to leave. The numerical readout of the PBT test was not admitted at trial. Trooper Munson arrested Chavez-Villa for driving while intoxicated immediately after he administered the two tests.

¶9 Trooper Munson transported Chavez-Villa to a detention center. At the detention center, Trooper Munson conducted the HGN test again. Trooper Munson also conducted two other sobriety tests, the one-leg stand and the walk-and-turn. Chavez-Villa then

provided a breath sample in an Intoxilyzer 8000 that registered his blood alcohol content at 0.167.

¶10    Trooper Munson testified at trial that he administered an HGN test to Chavez-Villa at the scene.  Trooper Munson was not qualified as an expert to testify about the correlation between alcohol ingestion and nystagmus.  Trooper Munson did not testify about conducting a PBT on Chavez-Villa at the scene or the numerical result of that test.  Trooper Munson also testified that he administered a second HGN test along with a walk-and-turn and a one-leg stand test at the detention center.  Trooper Munson testified that he administered an Intoxilyzer 8000 test at the detention center.  The court admitted the results of this Intoxilyzer 8000 test at trial.

## Standard of Review

¶11    We review a district court's evidentiary rulings for an abuse of discretion.  District courts possess broad discretion to determine the admissibility of evidence.  A court may exclude relevant evidence if the danger of confusion of the issues or misleading the jury substantially outweighs the evidence's probative value.  *McCormack v. Andres*, 2008 MT 182, ¶ 22, 343 Mont. 424, 185 P.3d 973.

## Discussion

4

¶12     *Whether the District Court properly allowed the results of the horizontal gaze nystagmus and preliminary breath test to be admitted at trial without expert testimony to establish the reliability of the tests.*

¶13     The jury watched the video that was taken in Trooper Munson's car.  The jury heard Trooper Munson tell Chavez-Villa that the PBT would show if he were over the legal limit.  The jury also heard Trooper Munson tell Chavez-Villa that he would be released if he were not over the legal limit or otherwise impaired.  The jury then heard Trooper Munson conduct the PBT and HGN test.  Trooper Munson arrested Chavez-Villa for driving under the influence directly after conducting these tests.

¶14     Chavez-Villa argues that the test results were implied even though the court excluded the numerical results of the tests.  We agree.  The dialogue before the tests, together with Chavez-Villa's arrest immediately after the tests, provided circumstantial evidence of the test results.  The jury likely drew the natural conclusion that the tests demonstrated that Chavez-Villa was over the legal limit or otherwise impaired.  The State, in effect, introduced circumstantial evidence of the test results.

¶15     The State must lay a proper foundation in order to introduce evidence of PBT and HGN test results.  To introduce the results of an HGN test, the State must demonstrate two things. *Hulse v. DOJ, Motor Veh. Div.*, 1998 MT 108, ¶ 70, 289 Mont. 1, 961 P.2d 75; *State v. Gieser*, 2011 MT 2, ¶ 10, 359 Mont. 95, 248 P.3d 300.  The officer who administered the test must testify that he received proper training in administering an HGN test. *Hulse*, ¶ 70.  The officer further must testify that he administered the test in accordance with his training. *Hulse*, ¶ 70.  The State must also produce an expert witness to explain the correlation

between nystagmus and alcohol consumption and the scientific basis for the reliability of the test. *Hulse*, ¶ 70. Similarly, the State must present expert testimony to demonstrate the PBT's accuracy and reliability to admit the test results as proof of intoxication. *State v. Weldele*, 2003 MT 117, ¶ 58, 315 Mont. 452, 69 P.3d 1162.

¶16    The State indirectly introduced evidence of the results of the PBT and HGN test through the video. Trooper Munson testified that he was trained in proper administration of an HGN test and that he administered the test on Chavez-Villa in accordance with his training. The State did not present, however, an expert witness to testify as to the scientific basis for or the accuracy of the HGN test. The State also did not have an expert witness testify as to the accuracy of the PBT. The State should not have presented evidence of the PBT and the HGN test results, directly or indirectly, without first having established the accuracy of the tests through expert testimony. *Weldele*, ¶ 58; *Hulse*, ¶ 70.

¶17    The State argues, in the alternative, that the introduction of the test results proved to be harmless error. We do not assume automatically that a trial error, such as the introduction of inadmissible evidence, prejudiced the outcome of the trial in a manner that warrants automatic reversal. *Weldele*, ¶ 61. We look to whether the erroneously introduced evidence might have contributed to Chavez-Villa's conviction. *Weldele*, ¶ 62.

¶18    The erroneously entered evidence offered proof of the intoxication element of the charge. The State argues, however, that other admissible evidence demonstrated that Chavez-Villa was under the influence. The State points to the testimony of Ferch, Trooper Munson, and Deputy Hackbarth as sufficient admissible evidence of Chavez-Villa's intoxication. The State contends that this cumulative evidence of Chavez-Villa's impairment

6

overcomes any reasonable possibility that the erroneously entered evidence contributed to Chavez-Villa's conviction. *Weldele*, ¶ 63.

¶19　Ferch provided detailed observations of Chavez-Villa's driving. Trooper Munson and Deputy Hackbarth both testified that they smelled the odor of alcohol on Chavez-Villa's breath and that they noticed Chavez-Villa's eyes were glassy. Trooper Munson also testified that Chavez-Villa seemed unstable on his feet and had to use a wall for support. Further, Trooper Munson testified that he conducted an Intoxilyzer 8000 test at the detention center that registered Chavez-Villa's blood alcohol content at 0.167. Chavez-Villa did not challenge the admissibility of the result. As we stated in *Weldele*, the Intoxilyzer result, "on its own, established the 'under the influence' element of the crime charged." *Weldele*, ¶ 63. This fact renders the indirect admission of the PBT and HGN test results "redundant, unnecessary, non-prejudicial and harmless." *Weldele*, ¶ 63. We agree with the State that the cumulative evidence of Chavez-Villa's intoxication presented at trial overcomes any reasonable probability that the indirect admission of the PBT and HGN test results contributed to Chavez-Villa's conviction.

¶20　*Whether the District Court properly excluded cross-examination about Chavez-Villa's blood alcohol content before Trooper Munson administered the Intoxilyzer 8000 test.*

¶21　The District Court sustained the State's objection to Chavez-Villa's question to Trooper Munson about Chavez-Villa's blood alcohol content at the time that Chavez-Villa had been driving. Chavez-Villa explained that he wanted Trooper Munson to admit that Trooper Munson had no personal knowledge of Chavez-Villa's blood alcohol content at the time Chavez-Villa had been driving. Chavez-Villa wanted the jury to understand that

7

Trooper Munson had not administered the Intoxilyzer 8000 test until long after Chavez-Villa had been driving.

¶22 Chavez-Villa overlooks the fact that Trooper Munson administered the PBT before Chavez-Villa had been arrested. At Chavez-Villa's request, the court had prevented the State from introducing the numerical results of this PBT. The court's exclusion of the PBT results would have forced Trooper Munson to answer Chavez-Villa's question as though he were unaware of the PBT results. The District Court determined it would be unfair to allow Chavez-Villa to imply to the jury something Chavez-Villa knew to be incorrect—that Trooper Munson had no knowledge of Chavez-Villa's blood alcohol content before Trooper Munson administered the Intoxilyzer 8000 test. The District Court determined that this scenario would mislead the jury and confuse the issues at trial.

¶23 A district court possesses broad discretion to determine the admissibility of evidence. A court may exclude relevant evidence if the danger of confusion of the issues or misleading the jury substantially outweighs the evidence's probative value. *McCormack*, ¶ 22. Our review of the record confirms that the District Court properly exercised its discretion in preventing Chavez-Villa's cross-examination of Trooper Munson regarding Chavez-Villa's blood alcohol content at the time that Chavez-Villa had been driving.

¶24 We affirm.

/S/ BRIAN MORRIS

We Concur:

/S/ MICHAEL E WHEAT

8

/S/ PATRICIA COTTER
/S/ JIM RICE

Justice James C. Nelson dissents.

¶25 I respectfully dissent from the Court's Opinion. I agree with the Court's analysis and condemnation of the District Court's admission of the PBT and HGN evidence. Opinion, ¶¶ 15, 16. HGN or PBT evidence is admissible because the *result* of the test goes to prove that the accused was intoxicated. The fact that the test was *given*, without also admitting the test *result*, proves nothing relevant to a DUI prosecution. Such partial evidence simply confuses the jury. This tactic—admitting evidence of *giving* the test, without admitting the test *result*—is, without more, reversible error in my view.

¶26 In this case, however, there was more. Specifically, Intoxilyzer evidence that Chavez-Villa's blood-alcohol content was 0.167 was admitted without objection; thus, arguably at least, the improper admission of the PBT and HGN evidence was harmless error.

¶27 I part company with the Court's Opinion because it is the State's burden to prove harmless error, not this Court's right or obligation to assume it. *See State v. Van Kirk,* 2001 MT 184, ¶ 47, 306 Mont. 215, 32 P.3d 735. In that case, we held that

> in order to prove that trial error was harmless, the State must demonstrate that there is no reasonable possibility that the inadmissible evidence might have contributed to the conviction. To do this, the State must demonstrate that the fact-finder was presented with admissible evidence that proved the same facts as the tainted evidence and, qualitatively, by comparison, the tainted evidence

9

would not have contributed to the conviction. In those cases in which no such cumulative admissible evidence was presented, then we must determine whether the tainted evidence went to the proof of an element of the crime charged or, by contrast, to some fact not involving an element of the crime. If there was no cumulative evidence presented as to a fact proving an element of the crime charged, then the error in admitting the tainted evidence which proved that element cannot be considered harmless, the qualitative assessment is never reached, and the court's decision will be reversed. If the evidence in question did not prove an element of the crime, then the State must demonstrate that, qualitatively, there is no reasonable possibility that the tainted evidence might have contributed to the defendant's conviction.

*Van Kirk*, ¶ 47.

¶28 Here, the State wholly failed to meet its burden of demonstrating harmless error as required by *Van Kirk*. The State's harmless error argument and analysis in its response brief on appeal consisted of one conclusory two-sentence paragraph on page 15 and a similar conclusory five-sentence paragraph on page 17. Thus, the State failed to meet the two-part *Van Kirk* test. The State did not (1) demonstrate how, in the case at bar, there was no reasonable possibility that the inadmissible PBT and HGN evidence might have contributed to the conviction, and (2) did not demonstrate that the fact-finder was presented with admissible evidence that proved the same facts as the tainted evidence, and that qualitatively, by comparison, the tainted evidence would not have contributed to the conviction. *See Van Kirk*, ¶ 47.

¶29 Rather, in this case, it is the Court itself that advances the arguments, justifications, and analyses that the State might have made, but did not. Opinion, ¶¶ 17-19. We make our own assessment and comparison of the qualitative effect of the tainted evidence; we determine from our own assessment that there was no reasonable possibility that the tainted evidence contributed to the conviction; and then we judge our own work to be persuasive. In

this approach, we set bad precedent and turn this Court's function on its head. Instead of being arbiters of the parties' arguments, we become advocates for the side we want to win. When the State is able to advance in conclusory fashion a harmless error argument without meeting its concomitant burden of proof, we prejudice the defendant and violate the rule which we clearly established in *Van Kirk.* It is not this Court's right or obligation to make the State's case on appeal where the State has failed to do so in its own right. Indeed, as we have said time and time again, " 'it is not this Court's obligation to conduct legal research on [a party's] behalf, to guess as to [its] precise position, or to develop legal analysis that may lend support to [its] position.' " *State v. Hicks*, 2006 MT 71, ¶ 22, 331 Mont. 471, 133 P.3d 206 (quoting *In re Estate of Bayers*, 1999 MT 154, ¶ 19, 295 Mont. 89, 983 P.2d 339). The Court erred in doing so in this case.

¶30    Because the State failed to meet its burden of demonstrating harmless error in the admission of evidence of the giving of the PBT and HGN tests without the results, I would reverse and remand for a new trial. I dissent from this Court's failure to do so.


/S/ JAMES C. NELSON