JUSTICE BAKER,
dissenting.
¶30 I agree with the Court that Caroline’s testimony from the civil order of protectionhearingwasinadmissiblehearsayunder M. R. Evid. 804(b)(1)(B), but I would find the error harmless and affirm Pingree’s conviction.
¶31 While the Court properly describes the appropriate harmless error analysis, Opinion, ¶ 20, it does not engage in a meaningful discussion of the qualitative impact of the inadmissible evidence. As the Court acknowledges, there was strong evidence, admitted properly at trial, to counter Pingree’s defense that the gun fired accidentally. Opinion, ¶¶ 24-26. Pingree’s argument on appeal is that the inadmissible evidence nevertheless was critical because Caroline’s testimony during the civil hearing was the only direct proof that Pingree intended to fire the gun, and that there was no independent evidence at trial to prove Pingree’s mental state. He contends that in the recorded 9-1-1 call, Caroline said that Pingree shot a gun right next to her, which was not inconsistent with his defense, whereas, in the civil hearing, she testified that he pointed a gun at her and fired, and then he laughed.
¶32 Review of the record reveals that Caroline’s testimony during the civil hearing was, in those respects material to the elements of the offenses with which Pingree was charged, substantively indistinguishable from what she reported during the recorded 9-1-1 call. When the State played the 9-1-1 recording at trial, the jury heard, from Caroline directly, the following conversation she had with the dispatcher:
[Caroline]: My husband just fired a gun at me.
[Dispatcher]: Your husband just what?
[Caroline]: Fired a gun at me.
[Dispatcher]: He fired a gun at you?
[Caroline]: Yeah.
[Audible crying.]
[Dispatcher]: Do you know why he fired at you?
[Caroline]:... No. We’ve been having a little bit of problems going on. He just kind of woke up and he came and he told me he was just playing with me but he actually fired the gun right by me.... I was sittin’ on the couch and he fired it like right next to me.
[Dispatcher]: Do you need an ambulance?
[Caroline]: No, he missed me.
*530 [Dispatcher]: Has he ever done this before?
[Caroline]: Oh we had some problems several years ago. Never to this extent, however. I filed a restraining order on him and I moved away, and then we both got sober and stuff, and I moved back about a year and a half ago.
[Caroline]: I was sittin’ on the couch and he just kinda came up and fired it right beside me.
[Caroline]: He just kind of put it up against me, shot it, and laughed.
[Caroline, after telling the dispatcher that Pingree is outside the bathroom door and may have heard her talking]: He asked me if I had really called the cops. [The line goes dead, but dispatch calls her back.]... When he unplugged the phone he said, “I need you to tell everybody that you just thought I shot into the floor.”
[Dispatcher]: So when he unplugged the phone he told you he just shot into the floor?
[Caroline]: He did, he knocked on the door, he said ..., “you just have to tell everybody I shot a shot into the floor, okay? I’m in a lot of trouble.”
¶33 This evidence is not qualitatively different from Caroline’s testimony during the civil hearing. During that hearing, she said that Pingree “pointed” the gun, whereas she told the dispatcher that he fired it “at me,” that he “fired it right beside me,” and that he “kind of put it up against me.” This is a distinction without a substantive difference. In both instances, she described Pingree laughing after he fired the gun. And, as the Court points out, there was independent corroborating evidence of the unlikelihood that the gun(s) could have been fired accidentally. Opinion, ¶ 25.
¶34 In determining whether trial error is harmless, “if the tainted evidence was admitted to prove an element of the offense, then the State must direct us to admissible evidence that proves the same facts as the tainted evidence and demonstrate that the quality of the tainted evidence was such that there was no reasonable possibility it might have contributed to the conviction.” State v. Derbyshire, 2009 MT 27, ¶ 47, 349 Mont. 114, 201 P.3d 811. This Court’s prior cases analyzing the qualitative impact of inadmissible evidence have found an evidentiary error to be harmless where there is untainted evidence of *531 the same facts and, in comparison to the inadmissible evidence, the untainted evidence outweighs the impact of the evidence that should not have been admitted.
¶35 For example, in Sanchez, the trial court improperly admitted hearsay testimony from a neighbor that the deceased victim (Aleasha) had told her that, during an argument, Sanchez stated, “[M]e love you, [Aleasha]. Me not love you that much. You cross me, I kill you.” Sanchez, ¶ 20. Although the evidence was powerful — and was evidence of words spoken by the victim that went directly to the disputed element of the defendant’s mental state at the time of the shooting — we concluded that its admission was harmless error, stating:
The jury heard from Aleasha’s killer himself, that, after learning of Aleasha’s infidelity, he made arrangements for the care of his children, he went to the store and purchased ammunition, he took the loaded gun to Aleasha’s house, he waited for her to come outside, and he shot her after a brief argument.
Sanchez, ¶ 25.
¶36 In State v. Stewart, 2012 MT 317, 367 Mont. 503, 291 P.3d 1187, we agreed with the defendant that the trial court improperly admitted recordings of four telephone conversations between the victim and the defendant (her father) where the victim confronted him directly about his sexual abuse of her over a period of many years. During one such call, for example, the following exchange occurred:
At the outset, A.S. reiterated that she was “tired of the sexual favors” because “it’s my body, it’s not your body.” Stewart stated, “Okay. Are you tired of it?” and A.S. replied, “Yes.” Stewart then stated, “Okay, it’s done. It’s that simple.”
Stewart, ¶ 9. The recorded calls were the only evidence tending to indicate the defendant’s admission to the sexual abuse of his daughter; he testified at trial that he had no sexual contact with her. Stewart, ¶ 18. Comparing the inadmissible recorded phone calls with the untainted evidence proving Stewart’s sexual abuse (which included the victim’s trial testimony), we first pointed out that “this is not a case where the recordings filled in large holes and chronological gaps in the witnesses’ testimony.” Stewart, ¶ 50. We concluded that although the recordings were “objectively reliable” evidence, “[qualitatively, nothing on the recordings is any more inflammatory or prejudicial than the other, admissible evidence at trial.” Stewart, ¶ 50.
¶37 In Mizenko, we held that the trial court improperly allowed hearsay testimony from a sheriffs deputy and police dispatcher relating statements the domestic violence victim had made to them at the time of the defendant’s assault of her. As here, the victim did not *532 appear at trial. Because the recording of the victim’s call to 9-1-1 was admitted without objection and related the same facts, we concluded that the error was harmless. Mizenko, ¶ 26.
¶38 In contrast, we have found evidentiary error not to be harmless when the evidence improperly admitted is qualitatively different from the untainted evidence. A clear example of this is State v. Gieser, 2011 MT 2, 359 Mont. 95, 248 P.3d 300, a DUI case in which the state had not laid a proper foundation for the admission of evidence of the Horizontal Gaze Nystagmus (HGN) test or the defendant’s breath test showing a blood alcohol concentration that exceeded the legal limit. Although untainted evidence established other indicia of intoxication, such as “the odor of alcohol, bloodshot and watery eyes, slurred speech, impaired coordination, and [the defendant’s] difficulty finding his licenset,]” we emphasized that the HGN and breath tests “have an appearance of precision and scientific reliability that is qualitatively different from the more subjective observations of the officer as to speech, eyes, coordination and odors.” Gieser, ¶¶ 15-16.
¶39 Comparing these cases to the evidence at Pmgree’s trial, it is evident that Caroline’s inadmissible hearsay testimony is not qualitatively different from her statements on the 9-1-1 recording. The facts recited by the Court in ¶¶ 24-26 demonstrate that other evidence properly admitted at trial proved the same facts. The question here isn’t whether the statements are cumulative, but whether the content of the prior testimony is “more compelling or deserving of greater evidentiary weight,” McOmber, ¶ 35, than Caroline’s recorded conversation with the dispatcher. Both the tainted and the untainted evidence in this case are the victim’s spoken words about Pingree’s conduct, and the evidence therefore is of similar quality. The evidence was used to both parties’ advantage. Pingree used Caroline’s prior testimony to call her credibility into question, pointing out in closing argument that she testified that Pingree grabbed the phone out of her hand in front of the responding law enforcement officers, but that none of the officers reported witnessing that. It is therefore speculative to say that the prior testimony had “substantive impact” on the jury’s decision to convict. Opinion, ¶ 27. The State’s case may have been even more compelling without it. In the final analysis, it cannot reasonably be argued that testimony read to the jury by a third person from a hearing that occurred weeks after the offense is more compelling or deserving of greater evidentiary weight than the recording of the victim’s twenty-minute wait in her locked bathroom while officers responded to her call for emergency assistance.
¶40 I dissent.